Albert PALMUCCI and
Elizabeth Palmucci

v.

GENERAL MOTORS
ACCEPTANCE CORP.

Civ. No. N–83–280 (PCD).

United States District Court,
D. Connecticut.

Oct. 4, 1985.

---

William H. Clendenen, Jr., Clendenen & Lesser, New Haven, Conn., for plaintiffs.

Cheever Tyler, Wiggin & Dana, New Haven, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Cross-motions for summary judgment on the sole remaining count in this consumer action require analysis of the tangled web of the truth-in-lending laws, i.e., the Consumer Credit Protection Act of 1968, as amended, particularly by the Truth-in-Lending Simplification Reform Act of 1980, codified at 15 U.S.C. §§ 1601, *et seq.;* Federal Reserve Board Regulation Z, 12 C.F.R. § 226 Supp. 1 (Reg. Z); and the Federal Reserve Board Staff Interpretations, 12 C.F.R. § 226(a) (Commentary), revised in 1981. Plaintiffs assert that parts of the standard retail installment contract (contract) used by General Motors Acceptance Corporation (GMAC) violate various format requirements imposed by truth-in-lending regulations. For the reasons below, and cognizant that so holding creates a split of authority within this district, summary judgment shall enter for defendant.

*Facts*

On December 3, 1982, plaintiffs executed a retail installment contract to finance the purchase of a 1983 Chevrolet. The contract, attached as Exhibit A, was assigned to defendant, GMAC. GMAC's lien on the automobile was recorded on the vehicle's certificate of title for which plaintiffs were charged $1.00. That charge was specified on Line 4D of the "Itemization of Amount Financed" in the contract. Mr. Palmucci also agreed to purchase *optional* credit life and credit disability insurance offered by GMAC and he so indicated by signing his name in a separate box in the contract labeled "Optional Credit Insurance." The premium for the insurance was specifically disclosed on Line 4C of the "Itemization of Amount Financed," and was referred to in the "Optional Credit Insurance" box in which those who purchase the insurance are informed that its cost is shown on Line 4C. Neither the lien fee nor the optional insurance premium was included in the "Finance Charge." They were included in the "Amount Financed."

*Discussion*

The Board of Governors of the Federal Reserve System is responsible for the implementation of truth-in-lending legislation. The Board's regulations and staff interpretations translate the general goals and provisions of truth-in-lending laws into the detailed rules which govern credit transactions. Regulation Z, for example, promotes "the informed use of consumer credit by requiring disclosures about its terms and costs." 12 C.F.R. § 226.1(b). It contains numerous technical specifications for the form and content of disclosures required of creditors. Failure to comply with either the substantive or format requirements of Reg. Z subjects the creditor to various civil liabilities. 15 U.S.C. § 1640.

Subpart C of Reg. Z contains the disclosure requirements for "closed-end" credit transactions, such as the simple, fixed-term installment loan in the instant case. Extensive excerpting of ¶¶ 17 and 18, the Commentary thereto, and the references therein, will aid in the resolution of the issues raised by the pending motions.

Regulation 226.17 **General disclosure requirements**

(a) *Form of disclosures.* (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else and shall not contain any information not directly related[37] to the disclosures required under § 226.18.[38] The itemization of the amount financed under § 226.18(c)(1)

must be separate from the other disclosures under that section.

---

[37] The disclosures may include an acknowledgment of receipt, the date of the transaction, and the consumer's name, address, and account number.

[38] The following disclosures may be made together or separately from other required disclosures: the creditor's identity under § 226.18(a), the variable rate example under § 226.18(f)(4), insurance under § 226.18(n), and certain security interest charges under § 226.18(o).

COMMENTARY:

*17(a) Form of disclosures.*

*Paragraph 17(a)(1).*

1. *Clear and conspicuous.* This standard requires that disclosures be in a reasonably understandable form. For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other. In addition, although no minimum type size is mandated, the disclosures must be legible, whether typewritten, handwritten, or printed by computer.

2. *Segregation of disclosures.* The disclosures may be grouped together and segregated from other information in a variety of ways. For example, the disclosures may appear on a separate sheet of paper or may be set off from other information on the contract or other documents:

—By outlining them in a box.

—By bold print dividing lines.

—By a different color background.

—By a different type style.

3. *Location.* The regulation imposes no specific location requirements on the segregated disclosures. For example:

—They may appear on a disclosure statement separate from all other material.

—They may be placed on the same document with the credit contract or other information, so long as they are segregated from that information.

—They may be shown on the front or back of a document.

—They need not begin at the top of a page.

—They may be continued from one page to another.

4. *Content of segregated disclosures.* Footnotes 37 and 38 contain exceptions to the requirement that the disclosures under § 226.18 be segregated from material that is not directly related to those disclosures. Footnote 37 lists the items that may be added to the segregated disclosures, even though not directly related to those disclosures. Footnote 38 lists the items required under § 226.18 that may be deleted from the segregated disclosures and appear elsewhere. Any one or more of these additions or deletions may be combined and appear either together with or separate from the segregated disclosures. The itemization of the amount financed under § 226.18(c), however, must be separate from the other segregated disclosures under § 226.18.

5. *Directly related.* The segregated disclosures may, at the creditor's option, include any information that is directly related to those disclosures.

Regulation 226.18 **Content of disclosures.**

For each transaction, the creditor shall disclose the following information as applicable:

(a) *Creditor.* The identity of the creditor making the disclosures.

(b) *Amount financed.* The "amount financed," using that term, and a brief description such as "the amount of credit provided to you or on your behalf." The amount financed is calculated by:

(1) Determining the principal loan amount or the cash price (subtracting any downpayment);

(2) Adding any other amounts that are financed by the creditor and are not part of the finance charge; and

(3) Subtracting any prepaid finance charge.

(c) *Itemization of amount financed.*

(1) A separate written itemization of the amount financed, including:

(i) The amount of any proceeds distributed directly to the consumer.

(ii) The amount credited to the consumer's account with the creditor.

(iii) Any amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons.

(iv) The prepaid finance charge.

(2) The creditor need not comply with paragraph (c)(1) of this section if the creditor provides a statement that the consumer has the right to receive a written itemization of the amount financed, together with a space for the consumer to indicate whether it is desired, and the consumer does not request it.

(d) *Finance charge.* The "finance charge," using that term, and a brief description such as "the dollar amount the credit will cost you."

(e) *Annual percentage rate.* The "annual percentage rate," using that term, and a brief description such as "the cost of your credit as a yearly rate."

\* \* \* \* \* \*

(n) *Insurance.* The items required by § 226.4(d) in order to exclude certain insurance premiums from the finance charge.

(o) *Certain security interest charges.* The disclosures required by § 226.4(e) in order to exclude from the finance charge certain fees prescribed by law or certain premiums for insurance in lieu of perfecting a security interest.

## COMMENTARY:

*18(c) Itemization of amount financed.*

1. *Disclosure required.* The creditor has 2 alternatives in complying with § 226.18(c):

—The creditor may inform the consumer, on the segregated disclosures, that a written itemization of the amount financed will be provided on request, furnishing the itemization only if the customer in fact requests it.

—The creditor may provide an itemization as a matter of course, without notifying the consumer of the right to receive it or waiting for a request. Whether given as a matter of course or only on request, the itemization must be provided at the same time as the other disclosures required by § 226.18, although separate from those disclosures.

2. *Additional information.* Section 226.18(c) establishes only a minimum standard for the material to be included in the itemization of the amount financed. Creditors have considerable flexibility in revising or supplementing the information listed in § 226.18(c) and shown in model form H–3, although no charges are required.

*18(n) Insurance.*

1. *Location.* This disclosure may, at the creditor's option, appear apart from the other disclosures. It may appear with any other information, including the amount financed itemization, any information prescribed by state law, or other supplementary material. When this information is disclosed with the other segregated disclosures, however, no additional explanatory material may be included.

*18(o) Certain security interest charges.*

1. *Format.* No special format is required for these disclosures; under § 226.4(e), taxes and fees paid to government officials with respect to a security interest may be aggregated, or may be broken down by individual charge. For example, the disclosure could be labelled 'filing fees and taxes' and all funds disbursed for such purposes may be aggregated in a single disclosure. This disclosure may appear, at the creditor's option, apart from the other required disclosures. The inclusion of this information on a statement required under the Real Estate Settlement Procedures Act is sufficient disclosure for purposes of Truth in Lending.

Regulation 226.4 **Finance charge**

(a) *Definition.* The finance charge is the cost of consumer credit as a dollar

amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit.... ·

\* \* \* \* \* \*

(d) *Insurance.* (1) Premiums for credit life, accident, health, or loss-of-income insurance may be excluded from the finance charge if the following conditions are met:

(i) The insurance coverage is not required by the creditor, and this fact is disclosed.

(ii) The premium for the initial term of insurance coverage is disclosed. If the term of insurance is less than the term of the transaction, the term of insurance also shall be disclosed. The premium may be disclosed on a unit-cost basis only in open-end credit transactions, closed-end credit transactions by mail or telephone under § 226.17(g), and certain closed-end credit transactions involving an insurance plan that limits the total amount of indebtedness subject to coverage.

(iii) The consumer signs or initials an affirmative written request for the insurance after receiving the disclosures specified in this paragraph. Any consumer in the transaction may sign or initial the request.

(e) *Certain security interest charges.* If itemized and disclosed, the following charges may be excluded from the finance charge:

(1) Taxes and fees prescribed by law that actually are or will be paid to public officials for determining the existence of or for perfecting, releasing or satisfying a security interest.

### COMMENTARY:

*4(d) Insurance.*

1. *General.* Section 226.4(d) permits insurance premiums and charges to be excluded from the finance charge. The required disclosures must be made in writing. The rules on location of insur-

ance disclosures for closed-end transactions are in § 226.17(a).

*4(e) Certain security interest charges.*

1. *Examples.* Examples of charges excludable from the finance charge under § 226.4(e)(1) include:

—Charges for filing or recording security agreements, mortgages, continuation statements, termination statements, and similar documents.

—Stamps evidencing payment of taxes on property if the stamps are required to file a security agreement on the property.

Only sums actually paid to public officials are excludable under § 226.4(e)(1).

2. *Itemization.* The various charges described in § 226.4(e)(1) may be totaled and disclosed as an aggregate sum, or they may be itemized by the specific fees and taxes imposed. If an aggregate sum is disclosed, a general term such as security interest fees or "filing fees" may be used.

3. *Notary fees.* In order for a notary fee to be excluded under § 226.4(e)(1), all of the following conditions must be met:
. . . .

The provisions above reveal the paradox of truth-in-lending law: how to provide a simple, clear disclosure to the consumer is a matter of forbidding complexity.

Generally, all federally required disclosures must be grouped together inside what is commonly referred to as the "federal box," and kept segregated from disclosures which may otherwise be required or permitted, e.g., by state law. *See* Commentary ¶ 17(a)(1). There are four exceptions to the rule that required disclosures appear in the federal box. These exceptions and the interplay among them are the predicate for plaintiffs' claims that the contract violates the format rules of Reg. Z.

A. The first exception is that the computation or "itemization" of the amount financed, required by Commentary ¶ 18(c)(1), must appear outside the federal box.

B. Second, at the discretion of the creditor, certain information which is "di-

rectly related" to required disclosures may appear inside the federal box. Examples of such "directly related" information, listed in Commentary ¶ 17(a)(1)(5), include a description of the grace period for late payments, brief captions, and other explanatory material.

C. Third, footnote 37 permits certain routine information not required to be disclosed, such as the consumer's name, address and account number, to appear in the federal box.

D. Finally, footnote 38 permits certain required disclosures, including security interest filing charges and credit insurance information to be made either "together or separately from other required disclosures," i.e., inside or outside the federal box.

Thus, the regulation sets forth what must be disclosed and separately provides for the place of disclosure.

### I.

Against this backdrop, plaintiffs first claim that GMAC's disclosure of a $1.00 lien listing fee *solely* in the itemization of the loan amount financed fails to comply with Reg. Z. Plaintiffs claim that a creditor who opts, under footnote 38, to disclose the lien listing fee outside the federal box may not make the disclosure solely in the itemization of the amount financed, as GMAC has done. *See* Exhibit A, Line 4D, Itemization of Amount Financed, listing "Lien Fee $1.00" under the subcaption "Official Fees Paid to Government Agencies," and the principal caption "Other Charges Including Amounts Paid to Others on Your Behalf." Instead, because Commentary ¶ 17(a)(1) provides that the itemization, as an entirety, must be "separate from the other disclosures under [¶ 18]," plaintiffs argue that this fee must be disclosed separately from the entire itemization and, if the creditor opts to disclose it in the itemization of the amount financed, another, separate disclosure must be made elsewhere in the loan documents.

Faced with the identical issue in *Lewis v. Award Dodge, Inc.,* 620 F.Supp. 135 (D.Conn.1985), this court, Eginton, J., held that the controlling law does require two separate disclosures of the lien fee, and that the disclosure of the lien fee solely in the itemization of the amount financed rendered the credit corporation liable to the consumer for statutory damages and attorney's fees under 15 U.S.C. § 1640. *See,* to the same effect, a Proposed Ruling Granting Plaintiffs' Motions for Partial Summary Judgment against Chrysler Credit Corp. in the consolidated matters of *Iulo v. B.A. Center,* Civil No. N–83–625 (EEB), and *Alzo v. Brennan Dodge,* Civil No. N–84–223 (EEB) (7/11/85). *See also Jiminez v. McDermott Chevrolet,* Civil No. N–84–20 (TFGD) (2/22/85), and *Russo v. Wallingford Auto Co.,* Civil No. N–83–642 (WWE) (3/5/85) (recommended granting of summary judgment motions similar to plaintiffs here on their merits but in the absence of opposing memoranda, citing Rule 9(a), Local Rules of Civil Procedure, District of Connecticut; both cases vacated by agreement as settled).

■ After reviewing Reg. Z and the Commentary, the undersigned respectfully differs, finding that, while two different provisions pertain to the disclosure of the lien fee in question, double disclosure is not required.

Plaintiffs' claim is that Commentary ¶ 17(a)(1) (requiring that the itemization, as an entity, be "separate from the other disclosures under" ¶ 18) requires the itemization, as an entity, to be physically separate from all other required closed-end credit disclosures. The parallel and more pointed provisions of the statute itself, at 15 U.S.C. § 1638(a)(2)(A) (the itemization or computation "shall not be disclosed with the *disclosures conspicuously segregated* in accordance with subsection (b)(1) of this section") (emphasis added), and the Commentary ¶ 17(a)(1)(4) (the itemization must be "separate from the other *segregated disclosures* under" ¶ 18) (emphasis added), make clear that the critical language relied on by plain-

tiffs requires merely that the entire itemization be physically separate from the federal box disclosures. Inasmuch as footnote 38, noted above, grants creditors the option to disclose security interest charges outside the federal box, the language relied on by plaintiff—that the entire itemization be separate from the federal box—neither supports nor even suggests that double disclosure of the lien fee is required. Nor does any other provision of the statute, Reg. Z, or the Commentary, preclude the footnote 38 disclosure from being listed in the itemization of the amount financed.

Indeed, commentators have uniformly agreed that footnote 38 disclosures are not precluded from appearing with or in the itemization. *See, e.g.,* D. Replansky, *Truth-in-Lending and Regulation Z: A Practice Guide to Closed-End Credit* 76 (1984) (If the creditor chooses to exclude the footnote 38 material from the federal box, it "may appear with any other information, including the itemization of the amount financed. ...."); R. Rohner, *The Law of Truth-in-Lending* ¶ 3.05[2][a] at 3–45, n. 252 (1984) (advising creditor caution in "designing systems to disclose security interest charges as a part of the itemization of the amount financed," not because of a necessity for a double disclosure, but because itemization need not be provided if the creditor discloses in the federal box that the consumer has a right to request an itemization and the consumer fails to do so.); and R. Clontz, Jr., *Truth-in-Lending Manual* ¶ 5.02[15] (Supp. I 1984) (Furnishing security interest related charge disclosures solely as a part of the itemization of amount financed "with no like disclosure blanks provided inside the [f]ederal ... [b]ox ... will work fine ....")

Accordingly, it is the considered view of the undersigned that "double disclosure" of the lien fee is not mandated by law. Rather, the truth-in-lending laws pursuant to footnote 38 permit the disclosure of security interest charges in the itemization of the amount financed, so long as the entire itemization is separate from (outside) the federal box. Of course, the content of the footnote 38 disclosure must satisfy other provisions of Reg. Z. Plaintiffs' first claim is, therefore, unavailing.

## II.

■ Plaintiffs' second claim is that defendant's footnote 38 credit insurance disclosure is also deficient. Originally, their argument on this point closely tracked their objection to defendant's footnote 38 security interest disclosure, as discussed above. Recognizing, however, that Commentary ¶ 18(n) specifically permits the insurance disclosure to "appear with any other information, including the amount financed itemization," plaintiffs now claim merely that it is wrong to "split" the disclosure of the premium amount (now listed on Line 4C of the itemization of amount financed) from the other required insurance disclosures (now located in the "insurance box"). *See* Exhibit A. The court, however, adopts a contrary view of both the facts and the law.

The Optional Credit Insurance provision, after disclosing that credit life and disability insurance "are not required to obtain credit and will not be provided unless you sign for them and agree to pay the additional cost," then goes on to inform the consumer that if option insurance is requested "the cost is shown ... [on Line] 4C of the itemization above." It is inappropriate to characterize as "split" a disclosure in which the insurance box, which contains two of the three required disclosures, incorporates by cross-reference the third requirement, the premium cost, disclosed four inches above that box in the itemization of amount financed. So long as the insurance disclosure includes all the required items in close proximity so that the consumer can readily understand his/her rights and the cost of insurance, such a disclosure, even though nominally split, complies with the law. *See, e.g.,* D. Replansky, *Truth-in-Lending and Regulation Z* 175:

[A]lthough the better practice is to place the cost of the insurance in close proximity to the rest of the disclosures, it is not

required. Thus the cost or premium could be included in the itemization of the amount financed, whereas the other disclosures and affirmative request appear elsewhere. If the separation is too great or confusing, however, the creditor may not meet the requirement that the disclosures be clear and conspicuous.

As defendant's insurance disclosure is neither unclear nor inconspicuous, the disclosure complies with the law.

### III.

Plaintiffs' final claim pertains to the phrasing of the following provisions in defendant's "federal box" disclosure:

Prepayment. If you pay off all your debt early, *you will not have to pay a penalty* and you may be entitled to a refund of part of the finance charge.

(Emphasis added). Plaintiffs assert that because the underscored phrase is gratuitous vis-a-vis their loan, and not, therefore, "directly related" to required disclosures, it is not permitted to be placed with the required disclosures in the "federal box." Reg. Z, § 226.17(a).

 Because the consequences of prepayment depend upon the manner of computing interest on the loan, disclosure obligations differ depending upon the type of loan involved. In a simple interest (self-amortizing) transaction, where all or part of the finance charge is computed by applying a rate to an unpaid principal balance, the creditor must disclose, within the federal box, whether or not a *penalty* may be imposed in the event of prepayment. Reg. Z, § 226.18(k)(1). When the finance charge is calculated in any other way, including by a precomputed finance charge as was concededly used here, the creditor must disclose whether or not any part of the finance charge may be *rebated* upon prepayment. Reg. Z, § 226.18(k)(2). Where the finance charge includes both simple and non-simple interest, both penalty and rebate disclosures are required. *See generally* R. Rohner, *The Law of Truth-in-Lending* ¶ 5.05[11].

Defendant's statement "you will not have to pay a penalty" is a permissible disclosure "directly related" to the required (segregated) disclosures, and not improperly placed in the federal box. This is particularly so in light of the requirement that the creditor "give a definitive statement of whether or not a penalty will be imposed or a rebate given." Reg. Z, § 226.18(k). It is not without significance to a debtor to know that he/she will not have to pay a prepayment penalty.

Accordingly, summary judgment shall enter for defendant, General Motors Acceptance Corp., as to all claims raised by plaintiffs.

SO ORDERED.

EXHIBIT A

**RETAIL INSTALMENT CONTRACT**

| GMAC | General Motors Acceptance Corporation | | Dealer Number | Contract Number |
|---|---|---|---|---|

| Buyer (and Co-Buyer)—Name and Address (Include County and Zip Code) | Creditor (Seller Name and Address) |
|---|---|
| ALBERT J. PALPUCCI ELIZABETH J. PALPUCCI<br>16V LAUREL ST.<br>WEST HAVEN, CT. | DAN PERKINS CHEVROLET, INC.<br>734 BRIDGEPORT AVE<br>MILFORD, CT 06460 |

You the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. The cash price is shown below as "Cash Price." The credit price is shown below as "Total Sale Price." By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.

**Description of Vehicle.** You agree to buy and the Creditor agrees to sell the following vehicle

| New or Used | Year | Make and Model | Body Type | Vehicle Identification No | Use for Which Purchased | |
|---|---|---|---|---|---|---|
| NEW | 19c3 | CHEVROLET MONTE | CARLO | 1G1AZ3795DR142502 | ☒ personal | ☐ agricultural |
| | | | | | ☐ business | ☐ |

If truck—Describe body and major items of equipment sold:

**468**

| TRUTH-IN-LENDING DISCLOSURES | | | | |

| ANNUAL PERCENTAGE RATE. The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you | Amount Financed The amount of credit provided to you or on your behalf | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down-payment of $6431.75 is |
|---|---|---|---|---|
| 15.00 % | $ 1828.82 | $ 5366.38 | $ 7195.20 | $ 13626.95 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | Or as Follows. |
|---|---|---|---|
| 48 | 149.90 | Monthly beginning 01/03/83 | |

**Late Charge.** If a payment is not paid in full within 10 days after it is due, you will pay a late charge of 5% of the late payment, with a maximum charge of $10

**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty and you may be entitled to a refund of part of the finance charge

**Security Interest.** You are giving a security interest in the vehicle being purchased

**Additional Information:** See the other side of this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and security interest.

### ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including any accessories, services, and taxes) — $ 11390.75 (1)

2 Total Downpayment = Net Trade-in $ 4500.00 + Cash Downpayment $ 1931.75
 Your Trade-in is a 1981 AMC CONCORD — $ 6431.75 (2)
 Year Make Model

3 Unpaid Balance of Cash Price (1 minus 2) — $ 4959.00 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
 A. Cost of Required Physical Damage Insurance Paid to the Insurance Company Named Below—Covering Damage to the Vehicle — $ N/A
 B. Cost of Optional Mechanical Repair Insurance Paid to the Insurance Company Named Below—Covering Certain Mechanical Repairs — $ N/A
 C. Cost of Optional Credit Insurance for the Term of this Contract Paid to the Insurance Company or Companies Named Below Life $ 143.90 Disability, Accident and Health $242.40 — $ 386.38
 D. Official Fees Paid to Government Agencies LIEN FEE — $ 1.00
 E. Taxes Not Included in Cash Price — $ N/A
 F. Government License and/or Registration Fees (Itemize) — $ 5.00
 G. Government Certificate of Title Fees — $ 5.00
 H. Other Charges (Seller must identify who will receive payment and describe purpose)
 to DAN PERKINS CHEVROLET, INC. DLR. CONVEYANCE FEE — $ 450.00
 to _____ for _____ — $ N/A
 Total Other Charges and Amounts Paid to Others on Your Behalf — $ 427.38 (4)

5 Amount Financed — Unpaid Balance (amount of credit you will get) (3 + 4) — $ 5386.38 (5)

**Insurance.** If any insurance is checked below the policies or certificates issued by the Companies named will describe the terms and conditions

**Required Physical Damage Insurance.** Physical damage insurance is required but you may obtain it from anyone you want who is acceptable to the Creditor The cost of this insurance is shown in 4A of the itemization above

Insurance Company N/A _____ Term _____ months

☐ $_____ Deductible Collision and either
 ☐ Full Comprehensive including Fire, Theft and Combined Additional Coverage
☐ $_____ Deductible Comprehensive including Fire, Theft and Combined Additional Coverage
☐ Fire, Theft and Combined Additional Coverage
Optional if desired— ☐ Towing and Labor costs ☐ Rental Reimbursement ☐ CB Radio Equipment

**Optional Mechanical Repair Insurance.** This insurance is not required to obtain credit. The cost of this insurance is shown in 4B of the itemization above

Insurance Company N/A

Term ☐ 36 months or 36,000 miles, whichever occurs first

Term: ☐_____

☐ $25 Deductible ☐ $50 Deductible

☐ $_____ Deductible

**Optional Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign for them and agree to pay the additional cost. If you want this insurance, check the insurance desired and sign below. If you have chosen this insurance the cost is shown in 4C of the itemization above

Check the insurance desired ☒ Life (Buyer ☒ Co-Buyer ☐ Both ☐)
☒ Disability, Accident and Health (Buyer Only)

☐ You may request credit life insurance from The Prudential Insurance Company of America under its group policy No. GL-360 if you are less than age 65. If you die while insured under this policy Prudential will pay the remaining amount of your debt on this contract up to $10,000. Your total policy coverage for this and any other contracts is limited to $15,000. The policy will not pay your debt if you commit suicide within one year of the date of this contract. You will receive a certificate explaining your coverage under the policy within thirty days of the day you sign this contract

By signing here, you are stating that you are under age 65.

☒ CELTIC LIFE INS. CO.
If Other Policy Name of Insurer

HARTFORD, CT.
Home Office Address

This policy will pay your debt on this contract up to $ 7195.20

Total policy coverage for this and any other contracts is limited to $ 16,800.00

Buyer Signature _____ Date 12/03/82

Co-Buyer Signature _____ Date

**THE INSURANCE, IF ANY, REFERRED TO IN THIS CONTRACT DOES NOT INCLUDE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS**

Inquiries relating to billing errors may be directed to seller at

DAN PERKINS CHEVROLET, INC. 734 BRIDGEPORT AVE MILFORD, CT 06460 203-373-4621
Address Phone

**NOTICE TO BUYER:**
1. Do not sign this contract before you read it or if it contains any blank space.
2. You are entitled to a completely filled-in copy of this contract when you sign it.
3. Under the law you have the following rights, among others:
 (a) to pay off in advance the full amount due and to obtain a partial refund of any unearned finance charge;
 (b) to redeem the property if repossessed for a default;
 (c) to require, under certain conditions, a resale of the property if repossessed.

You signed this contract and received a copy on (Do not date on Sunday) 12/ 3 , 19 82

Buyer Signs _____

Co Buyer Signs

**Co-Buyers and Other Owners** — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other owner signs here | Address

Creditor Signs | By | Title

| This contract is assigned with recourse under the terms of the Seller's Assignment on the reverse side | This contract is assigned without recourse or with limited recourse under the terms of the Seller's Assignment on the reverse side. DAN PERKINS CHEVROLET, INC. |
|---|---|
| Seller By (If Corp or Partnership) (Title) | Seller By (If Corp or Partnership) (Title) |

Z109 CT 12-81 (For use in the State of Connecticut) (1 of 4) **Notice: See Other Side** THIRD COPY — FOR DEALER