**In re Robert OLIVER, Andrea Oliver, Debtors.**

**Bankruptcy No. 8800508.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 8, 1989.

David A. Schechter, Providence, R.I., for debtors.

Daniel A. Calenda, Providence, R.I., for Ready Capital Corp.

John Boyajian, Boyajian, Harrington & Richardson, Providence, R.I., trustee.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on May 26, 1989 on Ready Capital Corporation's ("RCC") Motion for Relief from Stay, and the debtors', Robert and Andrea Oliver's ("Olivers"), objection thereto.

The relevant facts are summarized as follows: On December 23, 1987 the debtors, who were then also represented and receiving the assistance of present counsel in this proceeding, entered into a secondary mortgage loan agreement with RCC.[1] The loan, in the amount of $62,000, was secured by the debtors' residence located at 31 Commonwealth Avenue, Barrington, Rhode Island.[2] Eight months later, on August 11, 1988, the debtors filed a Chapter 13 petition, which was subsequently converted to a Chapter 7 case, on March 1, 1989. The debtors have made no postpetition payments on the RCC mortgage, and RCC therefore requests relief from the automat-

ic stay, and for leave to foreclose on the property.

As a defense to the Motion for Relief from Stay, the Olivers argue that the note and mortgage are invalid because RCC failed to comply with the Rhode Island Department of Business Regulation's disclosure requirements, when it processed their loan agreement. Specifically, the debtors allege that the brokerage and origination fees were not disclosed on the mortgage loan note, in accordance with R.I.Bus. Reg. § 87-4 (as amended, 1987),[3] and they contend that RCC's failure to disclose such fees and charges on the note instrument itself, constitutes a violation of § 87-4, entitling them to invalidate the loan in its entirety.

The issues before the Court, therefore, are whether: 1) RCC's failure to disclose such information on the actual promissory note itself, is a violation of the federal Truth in Lending Act and/or the State of Rhode Island Banking Division Department of Business Regulations; and 2) whether R.I.Business Regulation § 87-4 conflicts with the federal Truth in Lending Act, specifically, Regulation Z.

Although neither party addressed the federal Truth in Lending Act ("TILA") in their respective arguments, we think an analysis of the federal statute is necessary to the resolution of the issues before us, which include both federal and state statutes and regulations. The intent of Congress in enacting the federal TILA was to "assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601 et seq., and in order to carry out this purpose, Regulation Z was promulgated. The

---

1. The following loan documents are included in the record: 1) the mortgage; 2) the promissory note; 3) a Truth in Lending Disclosure Statement; and 4) a Disbursement Sheet, which itemizes the amount financed, fees and charges paid on the debtors' behalf, and the amount remitted to the debtors. (Plaintiffs' Exhibits No. 1–4.)

2. This property is also subject to a first mortgage with Old Stone Bank, entered into on October 24, 1974, in the original amount of $18,000.

3. Regulation 87-4 provides that:

No brokerage fees, loan fees, points, finders' fees, origination fees or any other similar charges shall be imposed on any secondary mortgage loan subject to this chapter until the time of the closing of such loan.

In the event that any such charges are generated by any licensee under the aforesaid chapter, such charges must be disclosed within the secondary mortgage loan note....

portions of Regulation Z which pertain to the disclosure requirements involved here, appear in the "closed end credit" section. According to Regulation Z, the required disclosures must be clear and conspicuous, grouped together, and segregated from everything else. 12 C.F.R. § 226.17(a). Further, § 226.18(c)(1), directs the creditor to disclose, by separate written itemization: 1) the amount financed; 2) the amount distributed directly to the consumer; 3) the amount credited to the consumer's account with the creditor; 4) the amount paid to others by the creditor on the consumer's behalf; and 5) any prepaid finance charges.[4]

Here, the disclosures made by RCC to the Olivers in the disbursement sheet document, in our opinion, are in conformity with the requirements of Regulation Z, 12 C.F.R. §§ 226.17 and 226.18. RCC has provided the debtors with a separate written document which clearly and conspicuously discloses all of the required information, such as the brokerage, origination and other fees and charges paid on the debtors' behalf. (*See* Plaintiff's Exhibit No. 3 in Appendix A.) Accordingly, we find no violations of the federal TILA.

■ But the debtors argue that Rhode Island has promulgated its own statutes and regulations addressing secondary mortgage loans, and that it is RCC's violation of the state regulation which entitles it to the relief sought. R.I.GEN.LAWS § 19–25.2–1 *et seq.;* R.I.Dept. of Bus.Reg. § 87–1 *et seq.* (as amended, 1987). Specifically, Regulation 87–4 requires that brokerage fees, loan fees, points, finder's fees, origination fees, and any other similar charges be disclosed "within the secondary mortgage loan note." The debtors argue that even though the fees and charges appear on the disbursement sheet document (which they acknowledged and signed with the assistance of their present counsel), Regulation 87–4 requires that such disclosures be made on the promissory note in-

strument itself, rather than on a separate document.

The dispositive question therefore, is whether the phrase "within the secondary mortgage loan note" was intended to refer exclusively to the promissory note document itself, or whether it may refer, as well, to the loan document package involved in the mortgage transaction.

To decide this issue the Court must "attempt to ascertain the intent by considering the enactment in its entirety and by viewing it in light of circumstances and purposes that motivated its passage." *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987). In applying this state standard, we find that the underlying purpose of the enactment of Regulation 87–4, was to ensure that consumers receive meaningful disclosure of the fees and charges incurred in connection with a secondary mortgage loan. Here, RCC's use of a separate written document setting forth the fees and charges incurred by the debtors as part of their loan, is consistent with the purpose of Regulation 87–4, and carries out its intent.

■ Moreover, and perhaps more important is the fact that our agreement with the debtors' interpretation of Regulation 87–4, requiring the disclosures to appear *on the loan note*, would create a conflict with the federal TILA, which permits said disclosures to appear on a separate document. *Palmucci v. General Motors Acceptance Corp.*, 618 F.Supp. 460 (D.Conn.1985) (citing the Federal Reserve Board Regulation Z, 12 C.F.R. § 226 Supp. 1 (Reg. z) ("[T]he disclosures may appear on a separate sheet of paper or may be set off from other information on the contract or other documents." *Id.* at 462)). We have previously held, and reaffirm here, that a statute should not be read to create a conflict between state and federal law, where a reasonable alternative interpretation will avoid the conflict. *In re Elliott*, 67 B.R. 866, 868 (Bankr.D.R.I.1986); *see also Mor-*

---

**4.** A creditor may avoid this disclosure requirement if it "provides a statement that the consumer has the right to receive a written itemization of the amount financed with a space for the consumer to indicate whether it is desired, and the consumer does not request it." 12 C.F.R. § 226.18(c)(2). Though this issue was not raised, RCC did include this statement on its loan document and the Olivers checked the box labelled "I do not want an itemization."

*ton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) (statutes should be construed so as to avoid conflict); *Potlatch Forests, Inc. v. Hays,* 318 F.Supp. 1368, 1374 (E.D.Ark.1970) *aff'd,* 465 F.2d 1081 (8th Cir.1972) ("[C]onflict between federal and state legislation are not to be presumed, and both bodies of legislation should be construed if possible, so as to avoid conflicts between them.").

Additionally, the conflict which would arise between state and federal law, if we accepted the debtors' interpretation of Regulation 87–4, would also raise constitutional issues such as pre-emption and the application of the Supremacy Clause.[5] Rather than to decide these issues, we choose to follow the doctrine that "[a] statute, of course, is to be construed, if such construction is fairly possible, to avoid raising doubts of its constitutionality." *St. Martin Evangelical Lutheran v. South Dakota,* 451 U.S. 772, 780, 101 S.Ct. 2142, 2147, 68 L.Ed.2d 612 (1981); *see In re Thompson,* 4 B.R. 823 (E.D.Va.1980) ("[T]his interpretation does not challenge the constitutionality of a state statute, which this Court is loathe to do, as statutes should be construed, if fairly possible, to avoid constitutional questions."); *Cuesnongle v. Ramos,* 835 F.2d 1486, 1495 (1st Cir.1987).

Considering the state regulation in issue, it is not only "fairly possible" but also, a reasonable interpretation of the legislative intent, to construe the language of § 87–4, as meaning, "within the series of loan documents." Accordingly, we find that RCC has violated neither R.I.GEN.LAWS § 19–25.2–1 *et seq.,* R.I.Business Regulation § 87–4, nor the federal TILA, since it did make the required disclosures to the Olivers, on the document labeled "disbursement sheet." [6]

■ Lastly, we must determine whether RCC is entitled to relief from the automatic stay of 11 U.S.C. § 362. It was represented, without objection, that the market value of the secured property is $90,000, that the balance due on the first mortgage is approximately $12,000, and that RCC is owed $75,000. Since no postpetition payments have been made to RCC by the Olivers, and considering the very small (if any) equity in the subject property, RCC's Motion for Relief from Stay should be granted.

Accordingly, it is ORDERED that Ready Capital Corporation's Motion for Relief from Stay is GRANTED.

Enter Judgment accordingly.

---

**5.** Regulation Z, 12 C.F.R. § 226.28 provides that "[s]tate law requirements that are inconsistent with the requirements contained in ... chapter 2 (credit transactions) ... and the implementing provisions of this regulation are preempted to the extent of their inconsistency."

**6.** Because we find no violations of law, we need not address the debtors' argument regarding the penalties accorded by R.I.GEN.LAWS § 19–25.2–29.

# APPENDIX A

PETITIONER'S EXHIBIT 3

## DISBURSEMENT SHEET
### READY CAPITAL CORP., LENDER

BORROWERS: Andrea J. Oliver and Robert Oliver, Jr.
SECURED PREMISES: 31 Commonwealth Avenue, Barrington, RI
DATE OF CLOSING: December 23, 1987
DATE FINANCE CHG. BEGINS TO ACCRUE: December 30, 1987

Principal Balance $ 62,000.00

Amounts advanced to borrower and/or paid to others:

| To: | | | |
|---|---|---|---|
| To: | **Ready Capital Corp.** | Origination Fee | 3720.00 |
| To: | Ed Porcaro | Broker's Fee | 3100.00 |
| To: | Record Data of New England | Title Insurance | 284.06 |
| To: | Bristol City Clerk | Recording Fee | $ 40.00 |
| To: | John P. Toscano, JR. Esq. | Legal Fee | $ 250.00 |
| To: | Ready Capital Corp. | 21 Days Interim Interest | $ 578.67 |
| To: | John P. Toscano, JR. Esq. | Title Examination | $ 150.00 |
| To: | Ready Capital Corp. | Credit Bureau Report | $ 25.00 |
| To: | Ready Capital Corp. | Transfer Fee | $ 10.00 |
| To: | Town of Barrington | real estate taxes & sewer #5-4955-00 | $ 2,491.78 |
| To: | Atty. David Schecter | legal fee | $ 4,000.00 |
| To: | David Schecter | Greater Prov. mortgage payoff | $ 36,000.00 |
| To: | David Schecter | Susan Thibeau mortgage payoff | $ 6,000.00 |
| To: | Paul Russo, Esq. | Kirshenbaum & Kirshenbaum release | $ 500.00 |
| To: | Stephen H. Musen, Esq. | American Frozen Foods release | $ 1,000.00 |
| To: | Bruce Katz, Esq. | Clinton B. Potter, MD release | $ 1,806.40 |
| To: | John P. Toscano, Jr. | discharges (5) | $ 30.00 |
| | | Total Expenses | $ 59,985.85 |
| | | Amount disbursed to borrower | $ 2,014.15 |

Handwritten margin figures:

```
3,720.00
3,100.00
  284.00 •
   40.00 •
  250.00 •
  578.67 •
  150.00 •
   25.00 •
   10.00 •
2,491.78 •
4,000.00 •
36,000.00 •
6,000.00 •
  500.00 •
1,000.00 •
1,806.40 •
   30.00 •
59,985.85 •

        0. A

62,000.00 +
59,985.85 -
 2,014.15 •
```

The Undersigned hereby consent to the disbursal of the proceeds of their loan from Ready Capital Corp. as set forth herein above and acknowledges receipt of a copy of this document.

_____
Andrea J. Oliver

_____
Robert Oliver, Jr.

_____
John P. Toscano,
Witness: