# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-109

BOBBY G. VICKERS AND
CASEY R. VICKERS

VERSUS

INTERSTATE DODGE, ET AL.

************

APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT,
PARISH OF LASALLE, NO. 31,692,
HONORABLE J. P. MAUFFRAY, JR., DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

Saunders, J., dissents and assigns written reasons.

### AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

L. David Cromwell
Joseph S. Woodley
Pettiette, Armand, Dunkelman, Woodley,
    Byrd & Cromwell, L.L.P.
Post Office Box 1786
Shreveport, Louisiana  71166-1786
(318) 221-1800
Counsel for Third Party Appellant:
        Bank One, National Association

Donald C. Brown
Woodley, Williams Law Firm, LLC
Post Office Drawer 3731
Lake Charles, Louisiana   70602-3731
(318) 433-6328
Counsel for Defendant/Appellant:
        Interstate Dodge, Inc.

**R. Joseph Wilson**
**Gaharan & Wilson**
**Post Office Box 1346**
**Jena, Louisiana 71342**
**(318) 992-2104**
**Counsel for Plaintiffs/Appellees**
**Bobby G. Vickers**
**Casey R. Vickers**

SULLIVAN, Judge.

This suit arises out of the purchase of a truck from Interstate Dodge, Inc. (Interstate), which was financed by Bank One, NA (Bank One). Interstate and Bank One appeal the trial court's judgment in favor of Bobby G. and Casey R. Vickers. For the following reasons, we reverse in part, affirm in part, and render.

### Facts

On December 29, 1999, brothers Bobby and Casey Vickers purchased a 2000 Dodge Dakota truck from Interstate. To make the purchase, Bobby traded in a 1997 Ford truck and he and Casey executed a "COMBINATION PROMISSORY NOTE TRUTH IN LENDING DISCLOSURE STATEMENT AND SECURITY AGREEMENT" (the Note) in favor of Interstate which was assigned to Bank One. The Note is a multi-copy form with copies that are imprinted when the original is written on. The original of the Note indicates that Bobby elected to purchase credit life insurance by placing his initials on a designated line. However, Bobby's initials are not on Bobby and Casey's copy of the Note nor are they on Interstate's copy of the Note.

Bobby and Casey filed suit, alleging that Bobby's initials were forged and that Interstate and Bank One violated the Louisiana Motor Vehicle Sales Finance Act (LMVSFA), La.R.S. 6:969.1-6:969.41, which incorporates the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667, and the disclosure requirements of Regulation Z of the Code of Federal Regulations, 12 C.F.R. §§ 226.1-226.36. They also alleged that the transaction violated the Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA), La.R.S. 51:1401-1414.

After a trial on the merits, the trial court determined that Bobby's initials were a forgery and that the transaction violated the LMVSFA, the TILA, Regulation Z, and

the LUTPA. Pursuant to La.R.S. 6:969.33, the trial court refunded the finance charge of $8,062.76 and awarded a civil penalty of $24,188.28 and attorney fees of $10,625.00. The trial court also awarded nominal damages of $300.00 to each of them under the LUTPA. The trial court further determined that Interstate and Bank One were solidarily liable for this violation and that Interstate was contractually obligated to indemnify Bank One.

Interstate and Bank One appealed, assigning a number of errors. Bobby and Casey answered the appeal, seeking an increase in attorney fees for work done on this appeal.

### *Disclosures*

The LMVSFA, formerly the Motor Vehicle Sales Finance Act, was enacted to regulate entities engaged in the business of lending money and companies which warehouse or hold installment contracts. *Terrebonne Bank & Trust Co. v. Lacombe*, 464 So.2d 753 (La.App. 1 Cir. 1984). As noted above, it incorporates a portion of the TILA and Regulation Z. Congress passed the TILA to provide consumers with meaningful disclosure of credit terms to allow them to compare the various credit terms available in credit transactions in order to avoid the uninformed use of credit and to protect them against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. § 1601. Regulation Z was enacted to implement the TILA. 12 C.F.R. § 226.1(a).

The TILA requires that payments for insurance made pursuant to a consumer credit loan be included in the finance charge unless the lender discloses that the insurance is not required to qualify for the loan and the borrower gives affirmative written indication of his desire to purchase the insurance after being informed that the

2

insurance is not required and the cost of the insurance has been disclosed to him in writing. 16 U.S.C. § 1605(b); 12 C.F.R. § 226.4(d). The LMVSFA incorporates Section 1605(b) by allowing a creditor to offer the purchase of "consumer credit insurance" to a borrower on an optional basis, if the creditor discloses "to the consumer at the time of contracting his option to purchase such insurance coverage, and . . . make[s] such disclosures as are required by Regulation Z, 12 C.F.R. 226.1 et seq." La.R.S. 6:969.25. "Consumer credit insurance" includes credit life insurance. La.R.S. 6:969.6(6) and 6:969.25(B).

The Note signed by Bobby and Casey combines a promissory note with disclosures required by the TILA and Regulation Z and a security agreement on the vehicle purchased. It begins with the date, the buyer/borrower's personal information and acknowledgments that the buyer/borrower is financing the purchase of the described vehicle from the named dealer and that the agreement is being assigned to Bank One. Next are two boxes side-by-side which are entitled "DISCLOSURES REQUIRED UNDER THE FEDERAL TRUTH IN LENDING ACT AND REGULATION." Together, these boxes are known as the "federal box." The left side of the federal box contains an "Itemization of the Amount Financed" in the transaction; the right side of the federal box contains information concerning the finance charge, which is stated to be "[t]he dollar amount my credit sale will cost me."

Following the federal box is a section entitled "INSURANCE," which contains disclosures regarding property insurance and "Credit Insurance" and includes the following:

> **Credit Insurance:** Credit Life and Credit Disability Insurance are **not required** in order to obtain this credit sale **and will not be provided**

3

**unless I initial below**.  I(We) have the option of voluntarily electing to purchase credit insurance through you:

Cost of Credit Life Insurance $ <u>2529.35</u>   I(We) want voluntary credit life insurance: <u>         </u> (Initials)

Cost of Credit Disability Insurance $ <u>N/A</u>  I(We) want voluntary credit disability insurance: <u>         </u> (Initials)

Unless otherwise indicated, credit life and credit disability insurance coverage is for the term of this credit sale.

(Emphasis added.)  A solid black line separates the Insurance section from the remainder of the Note.

Bobby and Casey contend that the Note violates the TILA because without Bobby's forged initials the credit life insurance premium should have been included in the finance charge but was not.  Instead, the premium was included in the amount financed itemization.  Specifically, Bobby and Casey urge that the requirements of 12 C.F.R. § 226.4(d) were violated in this transaction.  Section 226.4(d) provides that the credit life insurance premium:

[M]ay be excluded from the finance charge if the following conditions are met:

(i)  The insurance coverage is not required by the creditor, and this fact is disclosed in writing.

(ii) The premium for the initial term of insurance coverage is disclosed. . . .

(iii) The consumer signs or initials an affirmative written request for the insurance after receiving the disclosures specified in this paragraph. . . .

Bobby and Casey completed an application for credit life insurance, which was included in the documentation they had to complete for the purchase of the truck. Interstate and Bank One contend that the disclosures in the Note, together with Bobby and Casey's completion of the application for credit life insurance, satisfy the

requirements of Section 226.4(d). Bobby and Casey contend that, without one of them electing to purchase voluntary credit life insurance as provided in the Insurance section of the Note, the inclusion of credit life insurance in the Amount Financed, rather than the Finance Charge, violated Section 226.4(d).

The general form requirements for disclosures required in a transaction of this type[1] require that disclosures be made "clearly and conspicuously in writing." 12 C.F.R. § 226.17(a). The general rule for disclosures is that they must be grouped together and separated from other disclosures which may be required by state law. *Id.; Palmucci v. GMAC*, 618 F.Supp. 460 (DC Conn. 1985). There are four exceptions to this rule. 12 C.F.R. § 226.17(a)(1). One is Section 226.18(n), which provides that "the creditor shall disclose . . . [t]he items required by Sec. 226.4(d) in order to exclude certain insurance premiums . . . from the finance charge." Thus, the insurance disclosure required by Section 226.4(d) may be, but is not required to be, disclosed with the other disclosures required by Section 226.17. As described above, the insurance disclosures in the Note are separate from the other disclosures required by Section 226.17. However, the premium for credit life insurance is included in the amount financed itemization of the federal box and is also stated in the Insurance section.

In *Palmucci*, 618 F.Supp. 460, the plaintiffs argued that the inclusion of the insurance premium in the amount financed itemization and not in the insurance section of the retail installment contract, which contained the other required insurance disclosures, was a violation of the TILA. The court determined that this "splitting" of the disclosure of the cost of the insurance from the other two required disclosures

---

[1] This is a closed end transaction. *See* 12 C.F.R. § 2(10) and (20).

was not error. The court's reasoning in *Palmucci* is pertinent here because Interstate and Bank One's argument is essentially the same: the insurance disclosures in the Note and the application for credit life insurance authorization are "split." The court explained:

> It is inappropriate to characterize as "split" a disclosure in which the insurance box, which contains two of the three required disclosures, **incorporates by cross-reference the third requirement**, the premium cost, disclosed four inches above that box in the itemization of the amount financed. **So long as the insurance disclosure includes all the required items in close proximity so that the consumer can readily understand his/her rights and the cost of insurance, such disclosure, even though nominally split, complies with the law.** *See, e.g.,* D. Replansky, *Truth-in-Lending and Regulation Z* 175:
>
>> [A]lthough the better practice is to place the cost of the insurance in close proximity to the rest of the disclosures, it is not required. Thus the cost or premium could be included in the itemization of the amount financed, whereas the other disclosures and affirmative request appear elsewhere. **If the separation is too great or confusing, however, the creditor may not meet the requirement that the disclosures be clear and conspicuous**.

*Id.* at 466-67 (emphasis added).

The situation present in *Palmucci* is not the situation here—there is no cross-reference in the Insurance section to the application and the credit life insurance application was a separate document entirely. Furthermore, under the plain terms of the Note, credit life insurance was not provided unless Bobby or Casey initialed the line provided in the Insurance section. Accordingly, we find that Bobby and Casey's signatures on the application for credit life insurance cannot be read in conjunction with the disclosure contained in the Insurance section of the Note to satisfy the requirements of Section 226.4(d), and the credit life insurance premium is a finance charge.

6

***Bank One***

The trial court made the following determination regarding the liability of Interstate and Bank One:

> As a consequence of this court's finding of fact that the initials "BV" were forged in the truth in lending part of the combination form, the extender of credit, both defendants, as a result of error not in good faith, violated LSA-RS 6:969.18E. In fact, this court finds that there was actual bad faith in forging parts of the subject document.

> There was not sufficient evidence to prove which defendant's agent forged the petitioner Bobby Vicker's initials on the document. However, the "holder" of the subject consumer credit contract, was subject to all claims and defenses which the petitioner could assert against the seller of the subject vehicle.

Bank One assigns these findings as error, arguing that without any evidence that it forged or had knowledge of the forgery of Bobby's initials it should not be held liable under La.R.S. 6:969.18(E). We agree with the trial court's conclusion that a forgery is an intentional act. However, without proof that Bank One committed the act or knew of the forgery, holding it liable under the LMVSFA on the sole basis that it is by definition an "extender of credit" is error. The following discussion supports this conclusion.

Bank One next argues that the provisions of the TILA and Regulation Z preempt state law and that it is not liable for the forgery of Bobby's initials because it is not a creditor under the TILA. 15 U.S.C. § 1640(a). "The term 'creditor' refers only to a person who both . . . regularly extends . . . consumer credit . . . and is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(f). Bank One also argues that, as assignee of the Note, its liability is limited to those situations in

7

which a violation is apparent on the face of the disclosure document. 15 U.S.C. § 1641.[2]

The TILA preempts state law only to the extent that it conflicts with the TILA. *Alexiou v. Brad Benson Mitsubishi*, 127 F.Supp.2d 557 (DC NJ 2000). In *Alexiou*, the court determined that a New Jersey statute which provided that the subsequent holder of a consumer note is "subject to all claims and defenses of the retail buyer against the retail seller," N.J. State. § 12:16C-38.2, was preempted by the TILA. As the trial court's reasons reflect, the Louisiana version of this statute was also a basis for Bank One's liability.

Relying on *Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194 (3d Cir. 2000), which held that the Federal Trade Commission holder rule was inconsistent with and preempted by 15 U.S.C. § 1641(a) because it allowed greater assignee liability than is allowed by that section, the court in *Alexiou* found that New Jersey's holder rule was also inconsistent with this provision and held that "there can be no assignee liability except where the alleged violations are apparent on the face of the disclosure statement." 127 F.Supp.2d at 564.

The following reasoning is applicable to the situation presented here:

> After all, the primary parties to the retail installment contracts at issue here were the dealer . . . and the Plaintiffs. The assignee . . . simply financed the transaction and was not a party to the contract. As previously indicated, Congress intends for this type of third party to be less liable for disclosure violations. **It would be contrary to the goals of the TILA to hold an assignee liable under a state statute even**

---

[2] 15 U.S.C. § 1641 limits the liability of assignees, providing that an action may be maintained against an assignee "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." A violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter. *Id.*

**though the assignee has been assigned a contract that appears perfectly compliant with the law on its face.**

Moreover, if the conflicting state laws were not preempted, a creditor/assignee who conducts business on a national level would be compelled to research the laws of all of the states to ensure that it is abiding by each and every law promulgated by the states. These burdens are substantial and cumbersome to creditors and contradict the goal behind the TILA and its 1980 Amendments.

*Id.* at 565 (emphasis added).

As defined by the LMVSFA, "extender of credit" and "creditor" are contrary to the TILA as they extend liability to an assignee even when there is no indication on the face of the disclosure that the assigned contract violates the TILA. Accordingly, the TILA preempts the LMVSFA with regard to an assignee's liability, and without evidence that the forgery of Bobby's initials was apparent on the face of the Note, the trial court's finding of liability on the part of Bank One is error. The conclusion that the holder language in the Note renders Bank One liable for the forgery is also error.

### *Interstate*

### *The Louisiana Motor Vehicle Sales Financing Act v. the Truth in Lending Act*

Interstate assigns as error the trial court's finding of liability on its part and the award made pursuant to La.R.S. 6:969.18(E). The trial court believed Bobby when he testified that he did not initial the credit life insurance section request in the Insurance section of the Note. Based on the record, we find no error with this conclusion, and, consequently, find no error with the trial court's conclusion that his initials were forged.

The trial court also found that Bank One's representative testified "unequivocally" that the Note would have been returned to Interstate if Bobby's

9

initials were not on it when it was received by Bank One. No such testimony was presented on behalf of Interstate. Additionally, the evidence reveals other "errors" made by Interstate in the preparation of the Note and the information provided to Bobby and Casey: the premium for credit life insurance was incorrectly stated on the Note; the true cost of the truck to Bobby, as well as the trade-in amount assigned to the truck Bobby traded in were incorrectly stated in the Note; and the Note included a balloon payment which Bobby and Casey were not made aware of. Additionally, Interstate earned a portion of the credit life insurance premium, so it had an additional interest having Bobby and Casey purchase the insurance. This circumstantial evidence supports the conclusion that Interstate forged Bobby's initials. Accordingly, we find no error with the trial court's determination that Interstate is liable for the forgery of Bobby's initials. Furthermore, we find no error with the trial court's conclusion that forgery is "intentional" or "not in good faith."

Interstate next contends that the trial court erred in refunding the finance charges and awarding damages equal to three times the finance charges, as provided in La.R.S. 6:969.33(A)(1)(a). It urges that the damages provided by the TILA, which are significantly less than those provided by the LMVSFA, should have been awarded instead. Section 33(A)(1)(a) of the LMVSFA provides for "refund of all loan finance charges or credit service charges" and "the right to recover three times the amount of . . . charges together with reasonable attorney fees," if "the extender of credit has intentionally or as a result of error not in good faith violated the provisions of Part II of this Chapter."

Louisiana Revised Statute 6:969.18(E), which is contained within Part II of the LMVSFA, provides:

> To the extent not otherwise limited in amount or prohibited by this Chapter, an extender of credit may contract for and receive payment of additional fees and charges not specifically mentioned hereunder, **provided that such additional fees and charges are not considered to be additional finance charges for purposes of 12 C.F.R. 226.4.**

As previously discussed, the credit life insurance premium is an additional finance charge for the purposes of 12 C.F.R. 226.4 because it was not properly disclosed. Accordingly, collection of the premium is a violation of this provision.

Interstate also argues that the violation herein is only a technical violation that does not warrant the imposition of the refund and awards. This argument ignores the fact that La.R.S. 6:969.33 requires a consumer to notify the creditor of the violation before filing suit and allows the extender of credit to escape liability for the civil remedies it provides, if the creditor corrects the violation within thirty days of receipt of the consumer's notice. La.R.S. 6:969.33(B).

Bobby and Casey notified Interstate as required by these provisions. Interstate failed to take advantage of the opportunity to correct the violation and cannot now complain that the penalty of not correcting the error is too severe.

### The Louisiana Unfair Trade Practices and Consumer Protection Act

The LUTPA provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. La.R.S. 51:1405. It confers a right of action on any person who "suffers any ascertainable loss of money or movable property, corporeal or incorporeal," for actual damages resulting from unfair trade practices, in addition to court costs and attorney fees. La.R.S. 51:1409.

The trial court determined that Bobby and Casey "did not present significant evidence of damages as a result of defendants' conduct." Review of the record

11

reveals that Bobby and Casey did not present any evidence of damages which resulted from the conduct herein. Accordingly, the awards of $300.00 are improper and are reversed.

### *Third Party Demand*

In 2001, the truck purchased by Bobby and Casey was destroyed by fire while at Finch Motors, L.L.C. (Finch) for repairs. The manufacturer replaced that truck with a new truck, which was substituted as collateral for the loan assigned to Bank One. Interstate filed a third party demand against Finch, seeking to hold it responsible in connection with the disclosures made in the Note. Interstate asserts that, by virtue of the substitution of collateral, Finch satisfies the definition of "creditor" by "arranging credit" under 15 U.S.C. § 1602(f). Finch was dismissed on a motion for summary judgment.

Under the facts presented herein and the law applicable thereto, substitution of a new truck for the 1999 truck as collateral for the Note is not a basis of liability for Finch, and it was correctly dismissed.

### *Venue*

Interstate next assigns as error the trial court's denial of its motion for change of venue. It contends that, because the sale of the truck to Bobby and Casey occurred in Ouachita Parish, La Salle Parish is not the proper venue under La.Code Civ.P. art. 42. Bobby and Casey point to La.Code Civ.P. art. 74 and contend that their damages occurred in La Salle Parish only, which is where they reside and where payments on the Note were issued.

After the trial court denied its exception of improper venue, Interstate filed an application for writs with this court. Interstate's arguments on this issue were

rejected in an unpublished opinion. *See Vickers v. Interstate Dodge, Inc.*, 01-198 (La.App. 3 Cir. 2003). We find no error with that decision.

### Bank One's Cross-Claim

Bank One filed a cross-claim against Interstate seeking indemnification, defense costs, and buy-back of the Note, pursuant to a motor vehicle contract purchase agreement it entered into with Interstate. Interstate appeals the trial court's judgment which ordered it to indemnify Bank One for all amounts Bank One must pay under the judgment and attorney fees and legal expenses incurred by Bank One in defense of this matter. The judgment also ordered Interstate to repurchase the Note pursuant to the contract.

Under the terms of the contract, Interstate represented, warranted, and guaranteed to Bank One that the documents it provided would be "genuine," "valid and binding," that the signatures were "authorized and genuine," that they were "not subject to any defenses . . . or claims by the Buyer against Dealer or Bank One," and that it had fulfilled all requirements of the TILA and all state laws governing consumer protection. Forgery of Bobby's initials is certainly a breach of these warranties.

Interstate urges that the contract does not allow for indemnity, repurchase of Bobby and Casey's contract, *and* defense costs. We have reversed the awards in favor of Bobby and Casey against Bank One; therefore, we need not address the issue of Interstate having to indemnify Bank One for amounts it must pay under the judgment. With regard to defense costs, attorney fees, and repurchase of the contract, we must consider the terms of the contract.

13

Paragraph 10 gives Bank One the option of requiring Interstate to repurchase the contract or to provide a defense for Bank One, while Paragraph 12 provides for Interstate "to indemnify and hold Bank One . . . harmless of and from any and all losses and expenses, including . . . court costs, attorney's fees and costs of litigation." The indemnification provided for in Paragraph 12 is "[i]n addition to the remedies set forth in this Agreement." Accordingly, Bank One has the right to require Interstate to repurchase the contract under Paragraph 10, to recover indemnity under Paragraph 12, and to recover defense costs and attorney fees under both Paragraphs 10 and 12. The trial court's award of defense costs and repurchase of the agreement was not error.

### Attorney Fees

Bobby and Casey seek an increase in attorney fees for the work performed by their attorney in connection with this appeal. When attorney fees have been appropriately awarded by the trial court, an increase in the award for work done on appeal is proper if "the defendant appeals and obtains no relief and . . . the appeal has necessitated additional work on the part of plaintiff's counsel, provided that plaintiff has requested the increase in accordance with the proper appellate procedure." *Carbon v. Allstate Ins. Co.*, 96-2109 (La.App. 1 Cir. 9/23/97); 701 So.2d 462, 474, *rev'd on other grounds,* 97-3085 (La. 10/20/98), 719 So.2d 437.

Bobby and Casey filed an answer to Interstate's appeal and properly requested an additional award of attorney fees for work performed on appeal. However, we have reversed portions of the judgment against Bank One and Interstate. Accordingly, we will not award an additional amount for work performed by Bobby and Casey's attorney on this appeal.

### *Disposition*

The judgment in favor of Bobby and Casey Vickers is reversed insofar as it awards judgment against Bank One, NA and awards damages of $300.00 to each of them under the Louisiana Unfair Trade Practices and Consumer Protection Act. The judgment is affirmed in all other respects. Costs of this appeal are assessed 25% to Bobby and Casey Vickers and 75% to Interstate Dodge, Inc.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-109

BOBBY G. VICKERS AND CASEY R. VICKERS
          Plaintiffs - Appellees

VERSUS

INTERSTATE DODGE, ET AL.

          Defendant - Appellant

On appeal from the Twenty-Eighth Judicial District Court, Parish of Lasalle, No. 31,692, Honorable J.P. Mauffray, Jr., District Judge, presiding.

SAUNDERS, Judge, dissents.

I disagree with the majority's original review in two respects. First, I believe the embarrassment and frustration that Plaintiffs experienced throughout this ordeal justifies the modest $300.00 award. I see no abuse of discretion in the trial court's action in this regard. If the award is affirmed, it is clear that Plaintiffs would be entitled to additional attorney's fees for the cost of this appeal.

Moreover, even if the $300.00 award is reversed, I believe the denial of attorney's fees for this appeal is a hypertechnical application of the general rule because only 1% of the total award was reversed with respect to Interstate. Generally, an appellee may obtain additional fees for the cost of an appeal when the appellant is unsuccessful. It seems rather extreme to affirm 99% of the judgment yet deny additional attorney fees because Defendant successfully appealed $300.00 of a $25,000 judgment.

For these reasons, I respectfully dissent.

JDS/nmf