**Kim WILLIAMS, Plaintiff,**

v.

**EMPIRE FUNDING CORP., et al., Defendants.**

**No. CIV. A. 97–4518.**

United States District Court, E.D. Pennsylvania.

Aug. 7, 2000.

Henry J. Sommer, Miller, Frank and Miller, Philadelphia, PA, David A. Searles, Donovan, Miller, LLC, Philadelphia, PA, for Plaintiff.

Patricia M. Hamill, Conrad, O'Brien, Gellman & Rohn, Philadelphia, PA, Paul J. Halasz, Loryn P. Riggiola, J. Michael Nolan, Jr., Joy Harmon Sperling, Pitney, Hardin, Kipp & Szuch, Florham Park, NJ, Mina A. Brees, Munsch Hardt Kopf & Harr, Austin, TX, Kevin M. Lippman, Munsch Hardt Kopf & Harr, Dallas, TX, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I. INTRODUCTION

In this case, the court is called upon to enter the labyrinthian world of federal and state consumer disclosure law. Plaintiff Kim Williams on behalf of herself and others similarly situated (plaintiffs) brought this action alleging violations of the Truth in Lending Act (TILA), 15 U.S.C.A. § 1601 et seq., the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C.A. § 1692 et seq., and the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Cons.Stat. § 201–1 et seq., as well as various common law claims. Defendants Fredmont Builders, Inc. and Stanley Rabner (collectively Fredmont defendants) are building contractors. Defendants Empire Funding Corp. (Empire), TMI Financial, Inc., EFC Servicing, LLC and First Bank, N.A. (collectively Empire defendants) are financial institutions.

Plaintiff Williams moved to certify a general class and three (3) subclasses under Fed.R.Civ.P. 23(b)(2) and (b)(3). The court conditionally certified a general class according to Fed.R.Civ.P. 23(b)(2) "for the purpose of determining whether plaintiffs

are entitled to seek recission under TILA." *Williams v. Empire Funding Corp.*, 183 F.R.D. 428, 433 (E.D.Pa.1998). The court deferred ruling on plaintiffs' request to certify the state law claims of the general class and all of the claims of the prospective subclasses. *Williams*, 183 F.R.D. at 433.

Presently before the court are the parties' cross motions for summary judgment on plaintiffs' TILA recission claim.[1] Plaintiffs' motion will be granted and Empire defendants' motion will be denied for three reasons. First, Empire defendants did not include a clear notice of plaintiffs' right to recission guaranteed under TILA in the financing agreement executed by plaintiffs. Second, Empire defendants' failure to provide a clear notice of plaintiffs' right to recission guaranteed under TILA in the parties' financing agreement extended the period of recission to three (3) years from the date of the transaction. Third, Empire defendants were not justified in including in the financing agreement executed by plaintiffs a notice of plaintiffs' right to recission which is required under Pennsylvania law, but which is inconsistent with TILA, on the ground that the Board of Governors of the Federal Reserve System (the Board) has not determined that the Pennsylvania law requiring inclusion of the one (1) day notice is preempted by TILA. Thus, plaintiffs are entitled to rescind the financing agreement which they executed with Empire defendants.[2]

## II. FACTS

Plaintiffs claim that they were victims of a fraudulent scheme executed by Fredmont defendants with the knowledge and consent of Empire defendants. Under a so called "two-contract scheme," plaintiffs contend that Fredmont defendants' salespeople targeted low-income areas, going door-to-door promoting a program of home improvements and repairs. During the initial home visits, the homeowners signed a "Work Order Contract" (the "sales agreement"), under which the homeowners agreed to retain Fredmont defendants to perform the home improvement work.

At a subsequent visit by Fredmont defendants' salespeople, the homeowners signed a "Home Improvement Installment Contract" (the "financing agreement"), under which the homeowners agreed to finance the debt owed to Fredmont defendants for the home improvements through Empire defendants. As required under TILA, the financing agreement executed by plaintiffs contains a notice of plaintiffs' right to rescind the contract "without cost or obligation ... within 3 business days of the date of this Contract" (the three (3) day notice). However, directly below the three (3) day notice, and as required under Pennsylvania law, the financing agreement contains a notice of a right to recission "subject to liability for any liquidated damage provision ... [if the right to recission is exercised] not later than five (5) p.m. on the business day following the date [of the contract]" (the one (1) day notice).[3]

Long after both the one (1) day and the three (3) day periods for recission described above expired, plaintiff Williams sought to rescind the financing agreement. Empire defendants denied plaintiff Williams' request. Consequently, plaintiff Williams initiated this action against both Fredmont and Empire defendants.

1. Additionally before the court is Empire defendants' motion to redefine the class pursuant to Fed.R.Civ.P. 23(c)(1), however, that motion is not addressed in this memorandum and accompanying order.

2. While the instant motions were pending, Empire filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas. By order dated July 31, 2000, the bankruptcy court granted plaintiffs' request for relief from the automatic stay imposed by § 362 of the Bankruptcy Code for the purpose of permitting the court to rule on the parties' pending motions.

3. The three (3) day notice appears by itself on a separate page of the financing agreement.

Under TILA, a consumer is entitled to rescind a transaction which results in the creation of a security interest in the consumer's home within three (3) days of the date of the transaction. TILA requires that financing agreements evidencing this type of transaction provide the consumer with a clear and conspicuous notice of the consumer's right to rescind the contract. If the financing agreement does not contain a clear and conspicuous notice of the consumer's right to rescind the contract within three (3) days of the date of the transaction, the period during which the consumer may rescind the contract is extended to three (3) years from the date of the transaction. In turn, Pennsylvania law similarly mandates that financing agreements resulting in the creditor taking a security interest in the consumer's home contain a notice of the consumer's right to rescind the contract. Under Pennsylvania law, however, the notice is required to inform the consumer that she must exercise the right to rescind within one (1) day of the date of the contract.

Plaintiffs contend that including *both* the three (3) day notice required under TILA and the inconsistent one (1) day notice required under Pennsylvania law in the financing agreement renders the three (3) day notice unclear. Therefore, plaintiffs claim, they are permitted to trigger recission of the financing agreement within the three (3) year period which TILA affords to consumers who are not provided with a clear notice of their right to recission.

Defendant[4] counters that inclusion of both the three (3) day notice and the one (1) day notice in the financing agreement does not render the three (3) day notice unclear because plaintiffs were merely afforded two (2) separate and overlapping rights of recission. In other words, defendant claims, the one (1) day notice does not detract from the three (3) day period of recission afforded to plaintiffs under TILA. Consequently, defendant maintains, since the notice of recission required by TILA in the financing agreement is clear, plaintiffs are not entitled to trigger recission of the financing agreement within the three (3) year default period available to consumers who do not receive a clear notice of their right to recission.

The interplay between TILA and Pennsylvania law presents a further related issue in this case. Defendant argues that under TILA, the Board is charged with the responsibility of determining whether a state mandated consumer disclosure requirement is preempted by TILA. Defendant contends that since Pennsylvania law requires inclusion in the financing agreement of the one (1) day notice and, further, since the Board has never found the Pennsylvania one (1) day notice requirement to be preempted by TILA, defendant was required to include both the TILA and the Pennsylvania required notices in the financing agreement.

The parties cross swords on two basic issues. First, whether a notice of the right to recission referencing both the three (3) day recission period under TILA and the one (1) day recission period under Pennsylvania law renders the three (3) day notice under TILA unclear. Second, assuming that the one (1) day notice rendered the three (3) day notice under TILA unclear, whether defendant was obligated to include the one (1) day notice in the financing agreement because the Board has not found that the one (1) day notice is preempted by TILA. The latter issue appears to be one of first impression.

## III. LEGAL STANDARD

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

---

**4.** Default has been entered against Fredmont defendants pursuant to Fed.R.Civ.P. 55, leaving Empire defendants as the only defendants presently involved in this litigation. Thus, the term, "defendant," in this memorandum includes only Empire defendants.

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. ANALYSIS

▮ TILA is designed to address the 'divergent and often fraudulent practices by which credit customers were apprised of the terms of the credit extended to them.' *Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 896, 898 (3d Cir.1990)(*quoting Johnson v. McCrackin–Sturman Ford, Inc.,* 527 F.2d 257, 262 (3d Cir.1975)). By enacting TILA, Congress sought "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C.A. § 1601(a)(1999). Because it is a remedial statute, TILA should be construed liberally in favor of consumers. *Smith,* 898 F.2d at 898.

▮ TILA attempts to achieve its remedial purpose through "a system of strict liability in favor of consumers when mandated disclosures have not been made." *Id.* (*citing* 15 U.S.C. § 1640(a)). Stated differently, "[a] creditor who fails to comply with TILA in any respect is liable to the consumer ... regardless of the nature of the violation or the creditor's intent." *Id.* (*citing Thomka v. A.Z. Chevrolet Inc.,* 619 F.2d 246, 249–50 (3d Cir.1980)). Moreover, because violations of TILA's disclosure requirements are governed by an objective standard, a consumer who has not actually been deceived may nevertheless seek relief under TILA. *Rodash v. AIB Mortgage Company,* 16 F.3d 1142, 1145 (11th Cir.1994), *abrogated on other grounds by Veale v. Citibank, F.S.B.,* 85 F.3d 577 (11th Cir.1996).

### A. Clear and Conspicuous Requirement and Recission

TILA expressly permits recission of certain contracts and requires creditors to clearly inform consumers of their right to rescind those covered contracts. *See generally* 15 U.S.C.A. § 1635(1999). TILA "generally permits a consumer borrower to rescind a loan transaction that results in the creditor taking a security interest in the borrower's principal dwelling." *In re Porter,* 961 F.2d 1066, 1073 (3d Cir.1992). "Congress created the statutory right of recission and required clear disclosure of that right because it thought that borrowers who take out consumer loans should have the chance to rethink those transactions if the titles to their homes will be put at risk." *Id.* at 1078.

TILA requires the creditor to "clearly and conspicuously disclose" the consumer's right to recission "in accordance with regulations of the Board." 15 U.S.C.A. § 1635(a)(1999). "Congress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lend-

ing law." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). Pursuant to its authority under TILA, the Board has promulgated a group of regulations designed to implement TILA called Regulation Z. Also as part of TILA's administrative framework, the Board's staff periodically issues authoritative interpretations of TILA and Regulation Z through the Official Staff Commentary to TILA (the Commentary). The Supreme Court has instructed that the pronouncements of the Board or its staff interpreting TILA and/or Regulation Z, when applicable, are to be "dispositive unless [they are] demonstrably irrational." *Milhollin,* 100 S.Ct. at 797, 797 n. 9; *see also Anderson Bros. Ford v. Valencia,* 452 U.S. 205, 101 S.Ct. 2266, 2274, 68 L.Ed.2d 783 (1981)(*citing Milhollin* ).

Under Regulation Z, the "creditor shall deliver two copies of the notice of the right to rescind to each consumer [who grants the creditor a security interest in the consumer's home]. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose [the procedure for exercising the right to rescind]." [5] If the creditor complies with TILA and Regulation Z, the

**5.** Regulation Z specifically requires disclosure of: (i) The retention or acquisition of a security interest in the consumer's principal dwelling; (ii) The consumer's right to rescind the transaction; (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business; (iv) The effects of recission ... [and] (v) The date the recission period expires. 12 C.F.R. § 226.23(b)(1)(1999). Plaintiffs do not dispute that defendant satisfied all of these requirements.

**6.** Regulation Z requires the consumer exercising her right to recission to "notify the creditor of the recission by mail, telegram, or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business." 12 C.F.R. 226.23(a)(2)(1999). Defendant does not dispute that plaintiff Williams satisfied this requirement.

consumer's right to recission terminates at midnight on the third business day after the day the transaction is consummated. 12 C.F.R. § 226.23(a)(3)(1999); *see also Porter,* 961 F.2d at 1073. If, on the other hand, "the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation...." 12 C.F.R. § 226.23(a)(3) (1999); *see also Porter,* 961 F.2d at 1073.[6] In this case, the parties do not dispute that defendant provided the three (3) day notice or that the notice was conspicuously placed. Rather, the issue is whether the three (3) day notice provided to plaintiffs is "clear." [7]

■■■ The Third Circuit Court of Appeals has instructed that whether a notice of the right to recission created by TILA is clear turns on whether the notice is subject to more than one plausible or sensible interpretation. *Porter,* 961 F.2d at 1077. If the notice is subject to two (2) or more sensible readings, and different results ensue depending upon which of the two (2) readings is adopted, the creditor has not provided the consumer with "clear notice of what [the] right to rescind entail[s]." *Id.*[8]

**7.** The issue in this case is the effect of the segment of the financing agreement entitled "Buyer's Right to Cancel," therefore, where the court refers to the notice of plaintiffs' right to rescind the financing agreement, it refers to that section of the financing agreement, not the separate document outlined in 12 C.F.R. § 226.23(b)(1)(1999). *See,* supra, note 3.

**8.** Plaintiffs argue that the circumstances surrounding the execution of the financing agreement and other information provided to plaintiffs further indicate that the TILA required notice of recission is not "clear." The court recognizes that in determining whether a particular reading of a notice of the right to rescind is sensible, the court may consider the circumstances of the transaction. *See Porter,* 961 F.2d at 1076 (examining use of notice in context of particular transaction); *Rodash,* 16 F.3d at 1146 (relying on *Porter* for proposition that determination of clear and conspicuous notice is fact-based determination). In other words, the court may consider not only the

■ In this case, the plain language of the financing agreement establishes that the notice of plaintiffs' right to recission guaranteed under TILA is subject to more than one plausible interpretation. The financing agreement provides as follows:

### BUYER'S RIGHT TO CANCEL

YOU, THE BUYER, *MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION.* SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.[9]

---

NOTICE TO BUYER: (1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT ... (4) *YOU MAY RESCIND THIS CONTRACT, SUBJECT TO LIABILITY FOR ANY LIQUIDATED DAMAGE PROVISION THEREOF AUTHORIZED BY LAW, NOT LATER THAN FIVE (5) P.M. ON THE BUSINESS DAY FOLLOWING THE DATE THEREOF* BY GIVING WRITTEN NOTICE OF RECISSION TO THE CONTRACTOR AT HIS PLACE OF BUSINESS GIVEN IN THE CONTRACT, BUT IF YOU RESCIND AFTER FIVE (5) P.M. ON THE BUSINESS DAY FOLLOWING, YOU ARE STILL ENTITLED TO OFFER DEFENSES IN MITIGATION OF DAMAGES AND TO PURSUE

ANY RIGHTS OF ACTIONS OR DEFENSES THAT ARISE OUT OF THE *TRANSACTION.*

A reasonable consumer could read the financing agreement in at least two (2) ways. First, a reasonable consumer could conclude that if she wishes to cancel the contract, she must do so within three (3) business days after the date of the transaction. Second, the same reasonable consumer could rely upon the material included below the solid black lines and conclude that the second disclosure trumps the first so that if she wishes to cancel the contract, she must do so within one (1) day of the date of the contract. Either of these two (2) interpretations is sensible, and the financing agreement does not clarify which of the two (2) periods for recission governs the consumer's right to rescind the contract.

The consequences which flow from the consumer's choice of recission periods are also inconsistent. For instance, if the consumer elects to rescind the contract within one (1) day of the date of the contract, the information below the solid black lines instructs that she will remain liable for "any liquidated damage provision ... authorized by law." *See* p. 14, *ante.* The information above the solid black lines, on the other hand, does not mention any costs or damages for which the consumer remains liable if she cancels the contract within three (3) business days of the date of the transaction. Thus, a reasonable consumer

---

language of the TILA required notice, but it may also consider information presented to the consumer outside of the TILA required notice. *See Smith,* 898 F.2d at 904–905 (noting that "there may be a case in which the creditor's acts or words effectively negate the written notice provided to a borrower"); *Rodash,* 16 F.3d at 1147 (finding that documents contradicting the notice of right to rescind "preclude the possibility of 'clear' disclosure"). In this case, however, because the text of the financing agreement indicates whether the three (3) day notice is clear, it is unnecessary to examine any further information or circumstances.

**9.** The Notice of Cancellation form referenced in the financing agreement includes the two (2) words, "FEDERAL LAW," in the upper left hand corner of the document and provides, in pertinent part, "You are entering into a transaction that will result in a (mortgage/lien/security interest)(on/in) your home. You have legal right under federal law to cancel this transaction, without cost, within three business days from ... (1) the date of the transaction, which is 6/8/95...." *See* 12 C.F.R. § 226, App. H–8(1999). Plaintiffs do not dispute that the Notice of Cancellation form attached to the financing agreement complied with all applicable TILA requirements.

could not know if cancelling the contract later than one day after the date of the contract, but within three (3) days of the date of the transaction, relieves the consumer of liability for associated costs or damages.[10]

Finally, the starting point for each period of recission is a source of further ambiguity. The language located above the solid black lines in the financing agreement refers to "this transaction," whereas the information below the solid black lines reads in terms of "the date [of the contract]." See p. 14, *ante.* Because a reasonable consumer could interpret the date of a "transaction" to differ from the date of a "contract," a reasonable consumer could not know whether both periods of recission even begin to run on the same day.[11]

Defendant counters that inclusion of both the one (1) day notice and the three (3) day notice in the financing agreement is not prejudicial to plaintiffs because, at bottom, plaintiffs retained unaffected the three (3) day period for recission guaranteed under TILA. To put it another way, any ambiguity caused by the apparent inconsistency is harmless. Defendant's argument is misplaced for several reasons.

Initially, defendant's argument does not address the key issue in this case, namely, whether plaintiffs' right to rescind the financing agreement within three (3) days of the date of the transaction was clearly presented. 15 U.S.C.A. § 1635(a)(1999). Rather, defendant's argument concerns whether plaintiffs, despite the financing agreement's inconsistent language, were ultimately denied the protection afforded by the three (3) day period of recission guaranteed under TILA, not whether notice of that three (3) day period of recission was clearly presented. Under *Porter,* however, the relevant inquiry is not whether plaintiffs' right to rescind the financing agreement was ultimately altered by the inconsistency, but rather whether notice of that right is subject to more than one sensible reading. *Porter,* 961 F.2d at 1077.

■■■ Nor is defendant's argument in accord with the fundamental purpose of TILA. TILA is primarily a disclosure statute that does not require the consumer to suffer actual prejudice in order to maintain a cause of action. See *Villareal v. Snow,* 1996 WL 28282, *3 (N.D.Ill. Jan.19, 1996); 15 U.S.C.A. § 1635(1999); see also *Rodash,* 16 F.3d at 1145 (noting that consumer who has not actually been deceived may nevertheless seek relief under TILA). Thus, whether a consumer is entitled to rescind a transaction covered by § 1635 and Regulation Z depends upon whether she received a clear notice of her right to recission, not whether she was actually prejudiced by any ambiguity in the lending agreement. 12 C.F.R. § 226.23(a)(3) (1999); see also *Porter,* 961 F.2d at 1073. As the Third Circuit stated in *Porter,* "Our decision [granting a consumer the right to rescind within three years because of a faulty notice of her right to recission] thus cannot turn on whether or not ... [the consumer] has suffered an injustice." *Porter,* 961 F.2d at 1078.

---

**10.** According to TILA, a borrower who exercises her right to recission "is not liable for any finance or other charge, and any security interest given by the obligor ... becomes void upon such recission. Within 20 days after receipt of a notice of recission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise...." 15 U.S.C.A. § 1635(b)(1999).

**11.** Because the court concludes that information contained within the four corners of the financing agreement renders the TILA required three (3) day notice unclear, it is unnecessary to examine the sales agreement's effect upon the financing agreement. To the extent that any members of the class received financing agreements without the multiple periods of recission present in the financing agreement discussed in this memorandum, those individuals' rights to recission are not determined under this memorandum and accompanying order, but will be addressed in conjunction with defendant's request to redefine the class.

In light of the aforesaid, the court concludes that including two inconsistent periods for recission in the financing agreement renders the notice of the right to recission required under TILA unclear, and thus, extends the period for recission available to plaintiffs to three (3) years after the date of the transaction. *Porter,* 961 F.2d at 1077.

## B. *Defendant's Reliance on the Board's Inaction*

Defendant contends that even if the one (1) day notice required under Pennsylvania law causes the three (3) day notice required under TILA to be unclear, plaintiffs are nevertheless not entitled to rescind the financing agreement within three (3) years of the date of the transaction because defendant was required to include the one (1) day notice in the financing agreement under Pennsylvania law unless the Board had determined that it was preempted by TILA. Defendant argues that since the Board has never determined that TILA preempts the one (1) day notice required under Pennsylvania law, it was obligated to provide notice of both the one (1) day and the three (3) day period for recission in the financing agreement.[12]

Determining whether TILA permits a creditor to furnish an inconsistent state disclosure until the Board determines the state disclosure to be preempted by TILA requires an analysis of TILA's text, Regulation Z, and the Commentary.

In the first instance, TILA recognizes that state consumer credit law may conflict with its disclosure requirements. Specifically, TILA does "not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency." 15 U.S.C.A. § 1610(a)(1)(1999).[13] A state law is inconsistent with TILA "if it requires a creditor to make disclosures or take actions that contradict the requirements of the federal law." 12 C.F.R. § 226.28(a)(1999). A state law requirement is "contradictory if it requires the use of the same term to represent a different amount or, a different meaning than the federal law, or if it requires the use of a term different from that required in the federal law to describe the same item." *Id.*

In this case, the Pennsylvania Home Improvement Finance Act requires that every home improvement installment contract for work performed in Pennsylvania contain a notice informing the consumer that she may rescind the contract within one day of the date of the contract. As discussed above, this requirement contradicts the three (3) day notice required under TILA.[14]

TILA provides a mechanism for determining whether a disclosure requirement under state consumer law is preempted by TILA. *See* 15 U.S.C.A.

---

**12.** In its own words, defendant argues that "[a]lthough [The Pennsylvania Home Improvement Finance Act] provides a different recission period than the period given by TILA, the Board has never ruled on whether the disclosures mandated by [The Pennsylvania Home Improvement Finance Act] are preempted by TILA. Consequently, the disclosures required by [The Pennsylvania Home Improvement Finance Act] are not preempted, effectively imposing conflicting disclosure obligations on creditors making loans for home improvements in Pennsylvania." Def.'s Mem., Docket No. 70, p. 28.

**13.** Regulation Z repeats that state law disclosure requirements which are inconsistent with TILA are preempted to the extent of the inconsistency. 12 C.F.R. § 226.28(a)(1)(1999).

**14.** The Pennsylvania Home Improvement Finance Act also specifically refers to TILA, stating that every home improvement installment contract shall also contain the information "required to be disclosed by the Truth in Lending Act … and regulations issued thereunder for either closed-end or open-end extensions of credit as the case may be." 73 Pa. Cons.Stat.Ann. § 500–203(c.1).

§ 1610(a)(1999)("Upon its own motion or upon the request of any creditor, State or other interested party which is submitted in accordance with procedures prescribed in regulations of the Board, the Board shall determine whether any such inconsistency exists."). In turn, Regulation Z implements ˙ § 1610(a)'s scheme by instructing that a "creditor, state, or other interested party" may request the Board to determine whether a state law requirement is inconsistent with TILA. 12 C.F.R. § 226.28(a)(1)(1999).

The issue in this case is whether, under 15 U.S.C.A. § 1610 and Regulation Z, defendant was obligated to include the inconsistent Pennsylvania one (1) day notice in the financing agreement given that the Board has never been asked to determine whether the Pennsylvania one (1) day notice is preempted by TILA.[15]

 In interpreting a statute, the court must begin by examining the plain meaning of the statutory language. *K Mart v. Cartier, Inc.*, 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988). Moreover, where the statute is remedial and designed to protect a certain class of persons, in this case consumers, it should be construed liberally in favor of the protected class. *Smith*, 898 F.2d at 898.

 Close inspection of § 1610(a)(1) does not support the conclusion that a creditor is obligated to furnish an inconsistent state disclosure until the Board has determined that the state disclosure is preempted by TILA. Section 1610(a) provides, in pertinent part, that TILA does

> not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transac-

tions except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency. Upon its own motion or upon the request of any creditor, State or other interested party which is submitted in accordance with procedures prescribed in regulations of the Board, the Board shall determine whether any such inconsistency exists. If the Board determines that a state-required disclosure is inconsistent, creditors located in that State may not make disclosures using the inconsistent term or form, and shall incur no liability under the law of that State for failure to use such term or form....

15 U.S.C. § 1610(a)(1)(1999). Parsing out the language of § 1610(a)(1) is not helpful to defendant. The first sentence of § 1610(a)(1) sets forth TILA's general rule of preemption and does not condition a creditor's obligation to include state disclosures in its lending agreements upon whether the Board has determined those state disclosures to be preempted by TILA. In turn, the second and third sentences of § 1610(a)(1) refer to the Board's role in the preemption structure of TILA, but neither sentence purports to require a creditor to continue to include inconsistent state disclosures in its lending agreements until the Board has determined the state disclosures to be preempted by TILA. Rather, the second sentence merely instructs that if requested to do so, or on its own motion, the Board is authorized to determine whether a state law is preempted by TILA. 15 U.S.C.A. § 1610(a)(1)(1999); 112 C.F.R. Pt. 226(1999), App. A. The third sentence of § 1610(a)(1) supplements the second and permits creditors to rely upon a determi-

---

**15.** Defendant concedes, as it must, that the notice required by the Pennsylvania Home Improvement Finance Act is inconsistent with the TILA required three (3) day notice. *See* Def.'s Mem., Docket No. 70, p. 15 ("[The Pennsylvania Home Improvement Finance Act] provides consumers financing home improvement work with a one-day recission period, a shorter time than that provided by TILA. Despite this inconsistency, the [Pennsylvania Home Improvement Finance Act] recission period must be disclosed in the contract."). Thus, the court must only address defendant's contention that it was obligated to include the one (1) day notice in the financing agreement until the Board determines that it is preempted by TILA.

nation by the Board that a state law disclosure requirement is preempted by TILA. 15 U.S.C.A. § 1610(a)(1)(1999).

Beyond its plain meaning, TILA's legislative and regulatory history also refute defendant's position. Prior to the 1980 amendments to TILA, § 1610 did not include a mechanism by which creditors could request the Board to determine whether TILA preempted particular state disclosure requirements. At that time, § 1610 included only the general rule that TILA preempted state law only to the extent of any inconsistency with TILA. *See* 15 U.S.C.A. § 1610 (1970). Instead of affording creditors the option of requesting the Board to determine whether TILA preempted a particular state disclosure requirement, the prior version of Regulation Z permitted creditors to include in their lending agreements inconsistent state disclosures subject to certain conditions governing the manner in which the disclosures were made. *See* 12 C.F.R. § 226.6(c) (1976).

Congress, and in turn the Board, later modified this scheme in at least two important respects. First, § 1610 was amended to grant the Board the power to determine whether state disclosure requirements were preempted by TILA. 15 U.S.C.A. § 1610(1999). Second, since creditors now had the ability to request an advance ruling from the Board on whether a state disclosure requirement was preempted by TILA, the Board deleted the provision of Regulation Z permitting creditors to include inconsistent state disclosures in their lending agreements as long certain conditions were met. *Cf.* 12 C.F.R. § 226.6(c) (1976) and 12 C.F.R. § 226 (1999).

These changes to TILA's legislative and regulatory structure evince an intent to bar "inconsistent (contradictory) state disclosure[s] … completely from the contract paperwork." *See* Tidwell, Drew V., *Preemption of State Disclosures By The Truth In Lending Act: The Continuing Quest For A Workable Formula*, 40 Bus. Law. 933, 944 (1985). Thus, as a result of these changes to § 1610, creditors are no longer free to include inconsistent state disclosures in their loan documents.

Defendant relies upon the Commentary to Regulation Z and § 1610(a)(1) to argue that where, like here, the Board has not ruled on whether a particular state law is preempted by TILA, creditors are obligated to include in their lending agreements a state law requirement which is inconsistent with TILA. Defendant's reliance on the Commentary is misplaced.

The Official Staff Commentary to TILA provides, in pertinent part:

> *Creditor's Options.* Before the Board makes a determination about a specific State law, the creditor has certain options. Since the prohibition against giving the State disclosures does not apply until the Board makes its determination, the creditor may choose to give State disclosures until the Board formally determines that the State law is inconsistent. (The Board will provide sufficient time for creditors to revise forms and procedures as necessary to conform to its determinations.)

> * Under this first approach, as in all cases, the Federal disclosures must be clear and conspicuous, and the closed-end disclosures must be properly segregated in accordance with § 226.17(a)(1).

> * This ability to give State disclosures relieves any uncertainty that the creditor might have prior to Board determinations of inconsistency.

> As a second option, the creditor may apply the preemption standards to a State law, conclude that it is inconsistent, and choose not to give state-required disclosures. However, nothing in § 226.28(a) provides the creditor with immunity for violations of State law if the creditor chooses not to make State disclosures and the Board later determines that the State law is not preempted.

Official Staff Commentary, 12 C.F.R. Pt. 226(1999), Supp. I, Section 226.28(4).

The Commentary provides a roadmap to creditors faced with the prospect of including a seemingly inconsistent state disclosure requirement in their lending agreements. Under the Commentary, a creditor who must decide whether to include an inconsistent state disclosure in its lending agreements has two choices. First, the creditor may request the Board to determine whether the disclosure required under state law is preempted by TILA. If the creditor does so, it is then afforded a safe harbor pursuant to which it may include in its lending agreements the apparently inconsistent state disclosure without fear of liability while it awaits the Board's decision. Second, the creditor may choose not to furnish the state disclosure on the ground that the disclosure is preempted by TILA. If the creditor chooses the latter avenue, however, it is not immune from state liability if the Board later determines that the state law requirement is not preempted by TILA. In the instant case, the creditor triggered neither option. Defendant did not seek a determination by the Board, nor did it refrain from making the seemingly inconsistent state disclosures. Instead, defendant simply provided the inconsistent disclosure without requesting a determination by the Board. Therefore, the Commentary is not helpful to defendant.

For all of the above reasons, TILA and Regulation Z do not compel defendant to include the one (1) day notice required by Pennsylvania law in the financing agreement until the Board determines that TILA preempts the one (1) day notice.

## V. CONCLUSION

Because the financing agreement executed by the parties includes a notice of plaintiffs' right to rescind the contract which is subject to more than one plausible interpretation, only one of which satisfies TILA, defendant did not clearly present plaintiffs with their right to rescind the financing agreement. The failure to provide a clear disclosure of the right to recission guaranteed under TILA extends the period of recission to three (3) years from the date of the transaction. Furthermore, the court concludes that defendant was not justified in including the one (1) day notice required under Pennsylvania law in the financing agreement executed by the parties until the Board determined that the one (1) day notice was preempted by TILA. Therefore, judgment in favor of plaintiffs on their TILA recission claim is appropriate.

An appropriate order follows.

### ORDER

**AND NOW**, this **7th** day of **August, 2000**, upon consideration of Empire Defendants' Motion for Partial Summary Judgment or, in the Alternative, For an Order Redefining the Plaintiff Class Pursuant to Rule 23(c)(1) (doc. no. 70) and Plaintiff's Motion for Partial Summary Judgment (doc. no. 89), it is hereby ORDERED that Empire Defendants' motion is **Denied**[1] and Plaintiffs' motion is **GRANTED**.

It is **FURTHER ORDERED** as follows:

1. **JUDGMENT** is entered in favor of plaintiffs and against defendants on plaintiffs' claim brought under the Truth in Lending Act;

2. Plaintiffs are entitled to rescind the financing agreement which they executed with Empire defendants; and

3. Petition of Counsel of Defendants TMI Financial, Inc., EFC Servicing, LLC, and First Bank, N.A., Trustee n/k/a US Bank for Leave to Withdraw (doc. no. 106) is **DENIED WITHOUT PREJUDICE.**

**AND IT IS SO ORDERED.**

---

1. Empire defendants' request to redefine the class is denied without prejudice.