**ALEXIOU**

v.

**BRAD BENSON MITSUBISHI, et al.,**

No. CIV. A. 00–1298.

United States District Court, D. New Jersey.

Dec. 26, 2000.

Lynda Lee, Spring Lake, NJ, for plaintiffs.

William F. Lang, III, The Margolis Law Firm, P.A., Verona, NJ, for Brad Benson Mitsubishi/Hyundai, defendant.

David R. Strickler, Norris, Mclaugh, NJ, for First Bank of Central Jersey, defendant.

POLITAN, District Judge.

Dear Counsel:

This matter comes before the Court on the Motion of Defendant First Bank of Central Jersey ("First Bank") to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Oral argument was initially heard on September 11, 2000. At oral argument the Court dismissed the First Count of Plaintiffs' Complaint against First Bank, which alleged assignee liability under the Truth In Lending Act.[1] First Bank also seeks dismissal of Counts Two through Six, all of which allege violations of New Jersey state law.

At oral argument on September 11, the Court directed Plaintiffs' counsel to file a supplemental brief addressing the issue of federal preemption of the state law claims, and adjourned the hearing on that issue until October 23, 2000. Plaintiffs' counsel and First Bank filed supplemental preemption briefs, and on October 23, 2000 the Court entertained additional argument on the issue of whether the Federal Truth In Lending Act preempts the New Jersey state law claims alleged by Plaintiffs against First Bank.

For the reasons stated herein, the Court finds that all of the remaining state law claims against First Bank are preempted by federal law, and as such, must be dismissed.

---

1. The Order accompanying this Letter Opinion reflects the September 11, 2000 ruling of this Court dismissing the First Count against First Bank.

## STATEMENT OF FACTS

Plaintiffs [2], Nicholaos Alexiou ("Mr.Alexiou") and Veronica Ortiz ("Ms.Ortiz") (collectively "Plaintiffs"), purchased automobiles from Brad Benson Mitsubishi. Mr. Alexiou purchased a 1999 Hyundai Elantra on or about April 29, 1999. Ms. Ortiz purchased a 1999 Hyundai Accent on or about July 23, 1999. Plaintiffs obtained financing from Defendant Brad Benson Mitsubishi for the purchase of their vehicles. Plaintiffs also financed the purchases of extended warranties and either Credit or GAP insurance. Plaintiffs and Brad Benson Mitsubishi entered into retail installment contracts which reflect the financing transactions. Upon execution, the retail installment contracts were contemporaneously assigned to First Bank.

The remaining counts against First Bank allege violations of state law only. Count Two alleges violation of the New Jersey Consumer Fraud Act, N.J. STAT. § 56:8–1 *et seq.* Specifically, Plaintiffs allege that they were unconscionably overcharged for the extended warranties and insurance and that they were not notified that the dealer was retaining a portion of the sales price as a commission.

Count Three alleges breach of contract and breach of the implied covenant of good faith and fair dealing, in violation of state common-law principles. Plaintiffs rely on the "Holder Rule" as set forth in the New Jersey Retail Installment Sales Act of 1960 ("NJRISA"), codified at N.J. STAT. § 17:16C–38.2, in their allegations against First Bank. Plaintiffs allege that under the Holder Rule, First Bank is a subsequent holder and is thus liable to Plaintiffs for any claims they would have had against the retail seller, Brad Benson Mitsubishi, assignor of the loans.

Count Four alleges a cause of action for money paid by mistake, in violation of state common-law principles. The two remaining counts are alleged against all defendants as individuals; both counts repeat and reallege all preceding paragraphs of the Complaint.

Because First Bank is an assignee of Plaintiffs' loans, the viability of all state law claims against First Bank hinges on whether First Bank can be held liable as an assignee under the New Jersey Holder Rule.

## DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure instructs that a court may dismiss a complaint if it fails to state a claim upon which relief can be granted. In deciding a motion to dismiss, courts must accept all allegations in the complaint as true. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). If "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," dismissal pursuant to Rule 12(b)(6) is proper. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The specific issue before the Court is whether a provision of the Federal Truth In Lending Act ("TILA"), 15 U.S.C. § 1641(a), which governs assignee liability preempts the NJRISA Holder Rule, N.J. STAT. § 17:16C–38.2, which also governs assignee liability. This issue appears to be one of first impression in this district.

As previously stated, if the TILA preempts the State Holder Rule, then an assignee of a loan can only be held liable as an assignee where that assignee has violated § 1641(a) of the TILA. The alleged TILA violations against First Bank have already been dismissed by this Court pursuant to Rule 12(b)(6). If the Court finds that the TILA preempts the State Holder Rule, the remaining state law claims against First Bank must be dismissed.

---

**2.** Notably, the Complaint purports to be a Class Action Complaint, however, a class has not been certified in this case to date.

## A. The Supremacy Clause

■ Congress clearly has the power to preempt state laws where it chooses to do so. U.S. CONST., Art. 6, cl. 2. Federal law may preempt state law "either by express provision, by implication, or by a conflict between federal and state law." *New York State Conference of Blue Cross & Blue Shield Plans et al. v. Travelers Ins. Co. et al.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). The Court must therefore analyze the preemption question with respect to each of these potential preemption avenues. However, the Court must begin its analysis with the presumption that Congress typically "does not intend to supplant state law." *Id.* at 654–55, 115 S.Ct. 1671. (*citing Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).

## B. Implied Preemption

■ First Bank argues that, in enacting TILA, Congress has impliedly preempted any state laws relating to disclosure in loan transactions. This type of preemption is commonly referred to as "preempting the field." First Bank contends that because Congress has preempted the field, the New Jersey Holder Rule is trumped by the TILA and thus has no effect. The Court is not convinced by this argument.

Congress has expressly addressed the issue of when the TILA preempts related state laws:

> [T]his subchapter [does] not annul, alter or affect the laws of any State relating to the disclosure of information in connection with credit transactions, *except to the extent that those laws are inconsistent with provisions of this subchapter* and then only to the extent of the inconsistency.

15 U.S.C. § 1610(a)(1) (emphasis added); *see also* Regulation Z, 12 C.F.R. § 226.28(a)(1). This language clearly indicates that Congress only intended to preempt state laws that conflict with provisions of the TILA. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386–87, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

■ Where a federal statute requires "inconsistency" in order for it to preempt state law, the federal statute cannot be one which preempts the field. *Id.; see also Heastie v. Community Bank of Greater Peoria,* 690 F.Supp. 716, 720 (N.D.Ill. 1988); *Harvey v. Ford Motor Credit Co.,* 8 S.W.3d 273, 275 (Tenn.Ct.App.1999); *Mason v. General Finance Corp. of Va.,* 542 F.2d 1226, 1230 (4th Cir.1976) (indicating that "Congress clearly did not preempt the field" in enacting TILA).

This Court is guided by the Supreme Court and the above-cited case law, which clearly indicates that the TILA was not meant to preempt the field of laws relating to consumer lending practices. For these reasons, First Bank's argument that Congress has impliedly preempted the New Jersey Holder Rule fails.

## C. Express Preemption

Defendants alternatively argue that the TILA expressly preempts all New Jersey state law claims, urging that a TILA provision pertaining to assignee liability conflicts with the New Jersey Holder Rule. The TILA limits the liability of assignees of loan contracts. A TILA provision prevents the imposition of liability on assignees unless the alleged TILA violations are apparent on the face of the disclosure statement. The federal law states, in part:

> Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a creditor may be maintained against any assignee of such creditor *only if* the violation for which such action or proceeding is brought is *apparent on the face of the disclosure statement,* except where the assignment was involuntary.

15 U.S.C. § 1641(a) (emphasis added).

The Holder Rule under the NJRISA

also provides for assignee liability.[3] It states, in relevant part:

> Any subsequent holder of a consumer note shall be subject to all claims and defenses of the retail buyer against the retail seller arising out of the transaction but no such claim or defense may be asserted against such holder in excess of the time sales price under the retail installment contract for any sale, except that, in the case of the sale of a new motor vehicle, as defined in R.S. 39:10–2, no claim or defense may be asserted against such holder in excess of the time balance under the retail installment contract.

N.J. STAT. § 17:16C–38.2. The State Holder Rule does not require that a violation be "apparent on the face of the disclosure statement" in order for a subsequent holder, such as an assignee of a loan contract, to be held liable for the disclosure violations of the assignor. Therefore, an assignee who could not be held liable under § 1641(a) of the TILA could at the same time be liable for certain disclosure violations of an assignor under the New Jersey Holder Rule. But this observation does not necessarily answer the question of whether the New Jersey Holder Rule is "inconsistent" with § 1641(a) as required by § 1610(a)(1) for preemption.[4]

■ In determining whether federal law expressly preempts a state statute, the Court must look to whether Congress intended to preempt related state laws when it promulgated the federal statute. *FMC Corp. v. Holliday,* 498 U.S. 52, 56, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990); *see also*

---

**3.** The loan contracts at issue here qualify as "consumer notes" within the meaning of the NJRISA, and therefore are subject to this state law. *See* N.J. Stat. § 17:16C–38.2.

**4.** First Bank cites a New Jersey statute in support of its preemption argument which instructs:

> To the extent that the provisions of any of the following cited New Jersey laws are *inconsistent* with respect to disclosure ... [cites] Truth in Lending Act, of the Consumer Protection Act, and regulations issued pursuant thereto, compliance with said

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that where congressional intent is clear, a court must give effect to such intent). In ascertaining congressional intent, a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Holliday,* 498 U.S. at 57, 111 S.Ct. 403 (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)).

As previously stated, the provisions under the TILA only preempt state law to the extent that a state law is "inconsistent" with those provisions. § 1610(a)(1); *see also* Regulation Z, 12 C.F.R. § 226.28(a)(1). The language of § 1641(a) clearly indicates that in order for an assignee of a loan to he held liable for disclosure violations, the violation Alleged by the plaintiff must be apparent on the face of the disclosure statement. The question therefore becomes whether the · New Jersey Holder Rule is "inconsistent" with § 1641(a) since it does not require that the alleged violations be apparent on the face of the disclosure statement for assignee liability to attach.

■ The Federal Reserve Board determines questions of inconsistency between state law and the TILA. § 1610(a)(1); 17 Am.Jur.2d § 260 (1990). The regulation instructs that a state law is inconsistent if:

> Federal law and regulations shall be deemed and construed to be compliance with the specifically related provisions of the following New Jersey laws: ... [cites] Retail Installment Sales Act of 1960.

N.J. STAT. § 17:3B–1 (emphasis added). This rule, while informative, does not answer the question at issue here. It too requires that a finding of inconsistency between the federal and state law be made in order for compliance with the TILA to be deemed compliance with the NJRISA.

if it requires a creditor to make disclosures or take actions that contradict the requirements of the federal law. A state law is contradictory if it requires the use of the same term to represent a different amount or a different meaning than the federal law, or if it requires the use of a term different from that required in the federal law to describe the same item.

12 C.F.R. § 226.28(a). The Board periodically issues authoritative interpretations of the TILA and Regulation Z, and the Supreme Court has held that such pronouncements are dispositive unless "demonstrably irrational." *Ford v. Milhollin,* 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). Here, however, there has been no determination by the Board that the New Jersey Holder Rule is inconsistent with § 1641(a).

A Pennsylvania District Court addressed the question of whether a creditor must comply with state law perceived to be inconsistent if the Federal Reserve Board has not pronounced that such state law is in fact inconsistent and thus preempted by the TILA.[5] *See Williams v. Empire Funding Corp.,* 109 F.Supp.2d 352, 356 (E.D.Pa. 2000). The plaintiff in *Williams* argued that because the creditor included two notices of rescission rights, the notice provision required by the TILA and the notice provision required by state law, the TILA notice requirement was rendered unclear. If the TILA notice is unclear, the TILA provides that the right of rescission should be extended to three years, thereby benefitting the plaintiff. *Id.* at 361. The defendants argued that because the Federal Reserve Board never made a determination of inconsistency, the state law was not inconsistent and the defendants were therefore required to give notice of a one day right of recision mandated by Pennsylvania state law. *See id.* at 361.

In response to this argument, the *Williams* Court indicated that a creditor has two options when faced with a scenario where state law may be inconsistent with the TILA but has not yet been determined to be inconsistent by the Board. *See id.* The first option for a creditor is to request a determination from the Board on whether the state law is inconsistent. If the Board determines that the state law is inconsistent and preempted, the creditor receives a safe harbor from compliance with state law. *See id.*

Alternatively, the creditor may choose not to comply with state law if it believes state law is inconsistent with the TILA, but if it is later determined that the state law was not inconsistent and preempted, the creditor is not immune from liability for noncompliance with state law. *See id.* at 364.

This Court recognizes that a determination from the Federal Reserve Board that the laws conflict is unnecessary in order for a court to find an inconsistency between state law and a TILA provision. In other words, a state law can be preempted on the basis that it is inconsistent with certain TILA provisions even though the Federal Reserve Board has not made an inconsistency determination.

■ The District Court for the Northern District of Illinois analyzed whether claims under the Illinois Consumer Fraud Act were preempted by the TILA provision which governs a borrower's right of rescission in loan transactions. *See Heastie,* 690 F.Supp. at 720–21. In determining the preemption question, the *Heastie* Court relied on the Supreme Court case of *Fidelity Federal Savings & Loan Assoc. v. De la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664, (1982), which instructs that state and federal laws are inconsistent when "compliance with both federal and state regulation is a physical

---

**5.** Unlike the case here, the inconsistency between the TILA and state law at issue in *Williams* was recognized by the Court as clear and unquestionable—a three day right of recision given by TILA versus a one day right of rescission given by Pennsylvania state law.

impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

In *Heastie*, it was not physically impossible for the creditor to comply with both state and federal law. Additionally, the *Heastie* Court found that its state consumer protection statute promoted the goals of the TILA, specifically the goal of the "informed use of credit," and ultimately held that the state law was not preempted. *Id.;* § 1601(a).

The question of whether it is physically impossible for an assignee such as First Bank to comply with the Holder Rule and with § 1641(a) is not easily answered. Neither the Holder Rule nor § 1641(a) imposes an affirmative duty on the part of an assignee. Instead, both laws indicate when assignees may be held liable for the violations of their assignors. So this analysis does not answer the question of inconsistency.

▇ Whether the Holder Rule can be considered an "obstacle" to the purposes of the TILA is an issue which this Court must carefully consider. While it may be the case that the Holder Rule promotes the TILA's goal of the "informed use of credit," § 1601(a), the Court is instructed by a recent Third Circuit opinion which indicates that the State Holder Rule may in fact be an obstacle to other goals of the TILA, including its goal of simplifying compliance for creditors. *See Ramadan v. Chase Manhattan Corp., et al.*, 229 F.3d 194 (3d Cir.2000).[6]

The *Ramadan* Court, in interpreting the congressional intent of the 1980 Amendments to the TILA, stresses that Congress intended that the amendments narrow the scope of assignee liability in loan transactions. *Id.* at 200. The *Ramadan* Court found and the legislative history makes it clear that Congress' goal in amending the TILA was to "make creditor compliance easier." *Id.;* S.Rep. No. 73, 96th Cong., 1st Sess.1979, 1980 U.S.C.C.A.N. 280, 1979 WL 10376 (Leg.Hist.).

The Congressional Committee formed for purposes of implementing the 1980 Amendments stated that the amendments were meant to serve the interests of both consumers and creditors, and that Congress was interested in "limiting creditor civil liability for statutory penalties to only significant violations," and also limiting the overall amount of litigation in this area. *Id. Ramadan* similarly stresses that Congress "narrowed considerably the potential scope of assignee liability" when it enacted the current version of § 1641(a). *Ramadan*, 229 F.3d at 200 (*quoting Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 693 (7th Cir.1998)). In fact, the *Ramadan* Court indicates that prior to the 1980 Amendments to the TILA, Congress established a clear distinction between the liability of a creditor, who is a person to whom the debt is initially payable, and the liability of an assignee, a person to whom the debt is ultimately owed. *Id.* The *Ramadan* Court found that the plaintiff's argument (that the parties intended for the assignee to assume liability for violations

---

**6.** The plaintiff in *Ramadan*, relying on *Ballay v. Legg Mason Wood Walker Inc.*, 878 F.2d 729 (3d Cir.1989), argued that the parties to a retail installment contract realized that the FTC Holder Notice rule was preempted by § 1641(a) but nevertheless intended to include the notice provision and assume greater responsibility than that imposed by § 1641(a). The Court rejected that argument, noting that inclusion of the FTC Holder Notice provision is required by federal law, 39 C.F.R. § 433.2, and that there was no evidence (unlike in *Ballay* ) indicating that the parties included the holder notice provision voluntarily. *See*

*Ramadan*, 229 F.3d at 202–03. Here too, there is no evidence that the parties had the opportunity to negotiate the terms of the retail installment contracts, or that First Bank voluntarily agreed to undertake greater liability than that imposed by § 1641(a).

The *Ramadan* Court adhered to the findings of its sister circuits, who have unanimously held that the FTC Holder Notice regulation is preempted by § 1641(a) to the extent that the FTC Holder Notice rule would allow for greater assignee liability than that imposed by § 1641(a).

not apparent on the face of the disclosure statement) would undo this important distinction. *See id.*

The *Ramadan* Court compared assignee liability under the Federal Trade Commission ("FTC") Holder Notice provision, a federal regulation that imposes greater liability on assignees in credit transactions than does § 1641(a). *Id.;* 16 C.F.R. § 433.2. The Court, in finding that § 1641(a) preempts the FTC Holder Notice Rule, relies on the "well-settled" principle that the FTC Holder Rule, as a regulation, does not trump the assignee liability rules set forth in § 1641(a), which is a "statutory mandate." *Id.* at 201. The Court stressed that the FTC Holder Rule was "far more expansive than TILA's assignee liability language," and that there was a "clear irreconcilable conflict" between the two provisions. *Id.* at 202.

But the Court noted that federal regulations must always be understood in light of any related statutory limitations. Where a regulation "irreconcilably conflict[s]" with a federal statute, only the statute governs. *Id.*

Though the present case does not involve a federal regulation versus a federal statute, the Court's observation that the FTC Holder Rule conflicts with § 1641(a) is nevertheless important to this Court's determination today because it indicates that the Third Circuit would similarly find that the New Jersey Holder Rule conflicts with § 1641(a) of the TILA, as the New Jersey Holder Rule is substantially identical to the FTC Holder Rule. The FTC Holder Notice requires the following notice to be given to consumers:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EX-CEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2(a); *Ramadan,* 229 F.3d at 196–97.

The New Jersey Holder Rule under the NJRISA states, in relevant part:

> Any subsequent holder of a consumer note shall be subject to all claims and defenses of the retail buyer against the retail seller arising out of the transaction but no such claim or defense may be asserted against such holder in excess of the time sales price under the retail installment contract for any sale, except that, in the case of the sale of a new motor vehicle, as defined in R.S. 39:10–2, no claim or defense may be asserted against such holder in excess of the time balance under the retail installment contract.

N.J. STAT. § 17:16C–38.2.

According to § 1610(a)(1), the TILA does not "annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions . . . except to the extent that those laws are inconsistent with provisions of this subchapter." Because the Third Circuit has instructed that the FTC Holder Rule is inconsistent with § 1641(a) and thus preempted by § 1641(a), it follows that the State Holder Rule is similarly inconsistent and preempted by § 1641(a) to the extent that it is inconsistent with § 1641(a). This means that there can be no assignee liability except where the alleged violations are apparent on the face of the disclosure statement. As this Court has previously found that there exist no apparent violations here, First Bank cannot be held liable for the alleged state law violations of Brad Benson Mitsubishi.

Furthermore, in light of the congressional intent behind the 1980 Amendments to make creditor compliance with consumer loan laws easier, the Court finds that the New Jersey Holder Rule puts an additional, unwarranted burden on creditors which goes against the purpose of the 1980

Amendments to the TILA. Section 1641(a) of the TILA provides one clear standard, namely that an assignee may be held liable for the violations of an assignor only when those violations are "apparent on the face of the disclosure statement." § 1641(a). Because the New Jersey Rule puts this additional burden on creditors (including assignees), the state law is contrary to the intent of Congress in enacting the TILA and its amendments, and "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *De la Cuesta,* 458 U.S. at 153, 102 S.Ct. 3014.

After all, the primary parties to the retail installment contracts at issue here were the dealer, Brad Benson Mitsubishi, and the Plaintiffs. The assignee, First Bank, simply financed the transaction and was not a party to the contract. As previously indicated, Congress intends for this type of third party to be less liable for disclosure violations. It would be contrary to the goals of the TILA to hold an assignee liable under a state statute even though the assignee has been assigned a contract that appears perfectly compliant with the law on its face.

Moreover, if the conflicting state laws were not preempted, a creditor/assignee who conducts business on a national level would be compelled to research the laws of all of the states to ensure that it is abiding by each and every law promulgated by the states. These burdens are substantial and cumbersome to creditors and contradict the goal behind the TILA and its 1980 Amendments.

Accordingly, the Court finds that the New Jersey Holder Rule, N.J. Stat. § 17:16C–38.2 is preempted by the federal TILA provision on assignee liability, 15 U.S.C. § 1641(a). Thus, First Bank cannot be held liable as an assignee of the Plaintiffs' retail installment contracts.

### D. Remaining State Law Claims

Relief on the remaining state law claims cannot be granted as the Court finds that First Bank cannot be held liable under state law as an assignee. For that reason, the remaining state law claims must be dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### *CONCLUSION*

For the foregoing reasons, Defendant, First Bank's motion to dismiss the Complaint is **GRANTED.** All claims against First Bank are hereby **DISMISSED WITH PREJUDICE.** An appropriate Order accompanies this Letter Opinion.